CHESAPEAKE & O. CANAL CO. (SMITH v.). See Case No. 13,024.

---

# Case No. 2,653.

## CHESAPEAKE & O. CANAL CO. v. UNION BANK.

[4 Cranch, C. C. 75.][1]

Circuit Court, District of Columbia. May Term, 1830.

### EMINENT DOMAIN—THE INQUISITION.

1. Where several warrants have been issued and returned, with inquisitions for condemning land for the use of the company, and each inquisition refers to the warrant returned therewith, it is competent to prove by parol which warrant is applicable to each inquisition.

2. The jury ought to ascertain and describe the bounds of the land by them valued, and the quality and duration of the interest and estate in the same.

3. The canal company is the sole judge, what interest in the land will be necessary for their operations, and the jury are to value such interest as the company shall require.

4. The charter does not require notice to be given to the party whose lands are sought to be condemned; and, therefore, the inquisition

[1] [Reported by Hon. William Cranch, Chief Judge.]

need not state that such notice has been given; but it ought, in fact, to be given, if the party be, at the time, within the county.

5. It is not necessary that the inquisition should state the value of the land separately from the damages.

6. The benefit to the owner may be as well set off against the value of the land as against the damages.

7. Quaere, whether it be necessary that the jury should ascertain the bounds of the land, upon the land itself, by metes and bounds?

8. In authorizing the condemnation of lands for a highway, the United States only claim to exercise the power, which belongs to every sovereign, to appropriate private property to public use.

[Approved in Shoemaker v. U. S., 147 U. S. 282, 13 Sup. Ct. 362.]

This was a motion, by Mr. J. Dunlop, to set aside an inquisition condemning land in Washington for the use of the Chesapeake and Ohio Canal Company, under the fifteenth section of its charter of January, 1824, granted by Virginia, and confirmed by Pennsylvania, Maryland, and the United States.

Key & Dunlop, for Union Bank.
Swann & Jones, for canal company.

[Before CRANCH, Chief Judge, and MORSELL, Circuit Judge.]

CRANCH, Chief Judge. 1. The first objection to the inquisition is, that the name of the owner of land does not appear in the inquisition; and although the inquisition refers to a warrant supposed to be returned therewith, yet that warrant is not annexed to the inquisition, nor referred to by any mark or other description by which it can be ascertained to which of the various warrants returned, it refers. In answer to this objection, we think it is competent for the clerk to whom, by law, it was returned; or for the marshal who took and returned the inquisition and warrant, to prove, by parol, the fact of the return, and to designate which warrant was returned with the inquisition. It is admitted in argument that a warrant was returned and filed with this inquisition; in which warrant the property proposed to be valued is stated to be the property of the Union Bank of Georgetown; and the inquisition with which it was returned and filed, is marked on the margin with these letters: "Pt. & Drs. U. B." We thing it is competent for the canal company to prove those facts by parol.

2, 3. The second and third objections are, that the property is not sufficiently described either in the warrant or inquisition. The description is in these words: "All those parts of a lot of land, lying in the county aforesaid, and known and recorded as lots eight (8), nine (9), and ten (10), in the square one (1), in the city of Washington, which lie west of the west side of Twenty-Eighth (28) street west; and all those other pieces of land belonging to said lots, or any of them, and being due west of the said lots, or any

of them, and extending thence to, and binding with, the channel of Rock creek,—the property of the president and directors of the Union Bank of Georgetown." It is evident, that neither the bounds of those parts of lots 8, 9, and 10, which lie west of Twenty-Eighth street west, if any such there be; nor of the pieces of land belonging or appertaining to said lots, are ascertained and described by the jury. The square 1 is bounded on the west by Twenty-Seventh street west; therefore no lot, in square 1, can extend west of that street. If any of the lots, in square 1, have privileges extending west of that street, such privileges are not parts of such lots, but appurtenances thereto. The pieces of land which are supposed to be "belonging or appertaining to said lots," are described as lying due west of the said lots; but whether contiguous thereto, or at what distance therefrom, does not appear. They are said to be extending thence. Whence? Not from the place where they were lying, for that would make them extend beyond themselves; not from the lots 8, 9, and 10, for Twenty-Eighth street intervenes; not due west of the same lots, for that designates no place at all. It is impossible to locate these appurtenances from the description. Nor does the plat of square 1, as recorded on the surveyor's books, or the engraved plan of the city, cure the defect. It does not appear that any water privilege is, by law, or by any authoritative regulation, in regard to the plan of the city, annexed to those lots; or, if there is, the extent of it does not appear to have been defined; the jury, therefore, ought to have ascertained and described the bounds of the land by them valued; and not having done so, the inquisition must be set aside. It is much better for all parties, that the error should be now corrected by a new inquisition, than that it should be left for future litigation.

4. The fourth objection is, that the jury ave not "described and ascertained the quality and duration of the interest and estate in the same required by the company for its use." The only reason for introducing this provision into the fifteenth section of the charter, seems to have been to show what quantity of interest in the land was in the contemplation of the jury at the time of the valuation; for that quantity of interest, only, would pass by the valuation. The jury were to value such interest only as the company should require; it was, therefore, necessary that it should appear, in the inquisition, what that interest was. It has been supposed, in argument, that the jury was to ascertain whether that interest was or was not needed by the company. The word, however, is not "needed," but "required," by the company, who are the sole judges what interest in the land will be necessary for their operations; and the jury are to value

such interest as the company shall require. The fifteenth section of the charter authorizes the condemnation of land for the temporary use of the company in the construction of their works, as well as a more permanent interest for the actual bed of the canal, and the site of their locks, dams, ponds, and feeders; and the jury is to value the land itself, "as of an absolute estate in perpetuity," "or the partial or temporary appropriation, use, or occupation of such land," according as the same shall be required by the company; and upon such valuation, "and on payment thereof, the said company shall be seized of such land as of an absolute estate in perpetuity, or with such less quantity and duration of interest or estate in the same; or subject to such partial or temporary appropriation, use, or occupation, as shall be required and described as aforesaid, as if conveyed by the owner to them."

From a consideration of these and other provisions of this section, it seems to us very clear, that the canal company, so far as relates to the duty of the jurors, was to be the sole judge what interest in the land was required by the company; and that the only reason why the jury is to describe and ascertain the quality and duration of the interest required by the company is, that it may be known what sort of interest is valued by the jury, so as to know what interest passes to the company by the valuation and payment. The warrant states that the canal is intended to pass through certain land, and that the said land, (therein described,) "is needed as of an absolute estate in perpetuity, for the making of the said canal and its appurtenant works." The jury in the inquisition "say, that all the said land described in the said warrant as of an absolute estate in perpetuity and all damages," &c., "are of the value of one thousand dollars." They have, therefore, clearly expressed, in their inquisition, "the quality and duration of the interest and estate," in the land which they have valued. Its quality is "absolute," and its duration is "in perpetuity." They have not, indeed, stated that the company required an interest and estate of such quality and duration; but this they were not bound to do. They have stated what sort of interest and estate they valued; and the warrant which is returned with, and, by reference, made part of the inquisition, shows that the company required such an interest and estate as they have valued. They have, therefore, "described and ascertained the quality and duration of the interest and estate," "required by the company for its use," which is all they were, in this respect, bound to do.

Much stress, in the argument, was laid upon the word "as," in the finding of the jury in these words: "The jury say that all the said land described in said warrants as of an absolute estate in perpetuity," "and the damages," &c., "are of the value of one

thousand dollars;" whereas, in the warrant, the words, "as of an absolute estate in perpetuity," do not constitute any part of the description of the land; so that it is uncertain what interest or estate in the land the jury valued. But this uncertainty is removed entirely by noticing the comma, placed after the word "warrant," in that sentence, which disconnects the word "as" from the word "described," and throws it into the latter clause of the sentence, so as to connect it with the valuation. It is evident, therefore, that the whole sentence ought to be read thus: The jury "say, that the said land described in the said warrant, as an absolute estate in perpetuity and the damages are of the value of one thousand dollars;" showing that they valued the land as of an absolute estate in perpetuity.

5. The fifth objection is, that the inquisition does not show that notice was given to the Union Bank of the time and place of taking the inquisition. The charter does not require notice to be given to any of the parties interested. But as the marshal is to summon jurors not related to the parties, it seems to be necessary that the parties should be named in the warrant; and, perhaps, it may be good cause to set aside an inquisition taken under this charter, that the real owner had no knowledge of the time and place of taking it, if he was, at the time, within the county. But the warrant and inquisition are in the nature of a writ of ad quod damnum, which was a writ to inquire whether a grant, intended to be made by the king, would be to the damage of him and others. The making of a new highway, or the change of an old one, is an act of sovereign power; and the writ is issued at the mere motion of the sovereign himself, to inform his conscience. It is, therefore, an ex parte proceeding; as will be seen in the forms of the writ in Reg. Brev. 247–255. The king commands the sheriff that by the oath of good and lawful men, "you inquire whether it will be to the damage or prejudice of us or of others if we grant to I., that he may give and assign one messuage, &c., in W. to a certain chaplain, &c., to perform divine services for the good of his soul," &c., "and if it should be to the damage and prejudice of us or others, then to what damage and prejudice of us, or of others, and of whom," &c. "And an injunction thereof distinctly and openly made to us in our chancery, under your seal, and the seals of those by whom it shall have been made, without delay you send, and this writ." Test, &c. In folio 255, is a like form for granting a mill-race; and in none of the forms is the sheriff required to give notice to any of the parties; nor does the oath in the present case require the jurors themselves to say whether notice was given or not. It seemed to be admitted in the argument that notice had been actually given to Mr. Beverly, the president of the

Union Bank, and that he attended. If such was the fact, I do not think the inquisition should be set aside merely because it does not in itself contain the evidence of notice.

6. The sixth objection is, that the jury have not distinguished between the value of the land and the damages, but have found the value and damages all in one sum. The oath is to "value the land and all damages," &c., "and in every such valuation and assessment of damages," the jury are "instructed to consider, in determining and fixing the amount thereof, the actual benefit," &c., "and to regulate their verdict thereby;" except, that "where such benefit shall exceed, in the estimate of the jury," "the value and damages ascertained as aforesaid," the owner shall not be required "to pay or contribute anything to the said company." The benefits to be derived, therefore, may be as well set off against the value of the land as against the damages, and we see no reason why the jury may not find the result in one entire sum.

7. The seventh objection is, that the jury have not stated that they described and ascertained the bounds of the land upon the land itself by metes and bounds. The charter directs the jury "to describe and ascertain the bounds of the land by them valued." I think this requires them to describe the lands which they value, and to state the bounds thereof with certainty, so that it may be known what they valued, and what would pass to the company upon payment of the valuation. It does not necessarily imply that they themselves were to run and measure the lines, or to see it done by a surveyor.

8. The eighth objection is, that by the Maryland act of cession to the United States, of this part of the District of Columbia, 1791, c. 45, § 2, congress are restrained from affecting the rights of individuals to the soil, otherwise than as the same should be transferred to the United States by such individuals; and it is contended that this prohibits the United States from taking private property in this district, for public use; and that the right of sovereignty, which Maryland exercised, was not transferred. We think it is a sufficient answer to this objection, to say that the United States do not, by this inquisition, or by the charter to the Chesapeake and Ohio Canal Company, claim any right of property in the soil. They only claim to exercise the power which belongs to every sovereign to appropriate, upon just compensation, private property, to the making of a highway, wherever the public good requires it.

MORSELL, Circuit Judge, concurred in the judgment to set aside the inquisition, and in the opinion, except as to the fifth and seventh objections. In regard to the fifth, he was of opinion that notice ought to appear somewhere in the record; and as to the sev-

enth, that it should also appear that the jury saw the lines run upon the land.

The inquisition set aside, and a new one ordered.