**FAY v. DOUDS, Regional Director.**

No. 100, Docket 21137.

United States Court of Appeals
Second Circuit.

Feb. 11, 1949.

722

Frank Scheiner and Morton Stavis, both of New York City, for appellant.

Charles T. Douds, Regional Director, Mozart G. Ratner, Atty., David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, and Norton J. Come, Atty., National Labor Relations Board, all of Washington, D. C., for appellee.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

L. HAND, Chief Judge.

The plaintiff, who is president of Local 475, of the United Electrical, Radio and Machine Workers of America, CIO, appeals. from a judgment of the District Court, denying a temporary injunction, and dismissing the complaint in an action against a regional director of the Labor Board. The complaint prayed (1) that the defendant be ordered to grant a hearing at which the Local might appear and put in evidence; (2) that he be enjoined from holding any election based only upon the consent of a rival union and the employer; and (3) that he be also enjoined from holding any election without placing the Local's name on the ballot. The undisputed facts as they appear in the complaint and in accompanying affidavits were as follows: Local 475 and the employer executed a contract on May 1, 1947, by which the Local was made the exclusive bargaining agent for the employees and in which the employer agreed to a union shop and a "check-off." The agreement was to continue in effect for a year, "and from year to year thereafter until terminated by either party giving to the other written notice by registered mail of termination sixty days prior to the expiration date." Neither party gave such a notice before March 1, 1948; but on February 20 the Local wrote to the employer as follows: "Under the provisions of the Taft-Hartley Act of 1947 [29 U.S.C.A. § 141 et seq.] * * * Local 475 hereby notifies you of its desire to modify our existing collective bargaining agreement * * * Will you please advise us when you are prepared to.meet with the union for the purpose of a collective bargaining conference?" On the 26th the employer answered: "In compliance with the provision of the Taft-Hartley Act, we hereby notify you that we desire to modify our existing agreement. * * * We propose to arrange for a meeting for the purpose of negotiating a new agreement." On March 4 the Local replied: "In order to expedite matters and give the Company an opportunity to acquaint itself with the requests being made by the union, we are attaching herewith a copy of our proposals. We should appreciate being advised when the Company would be prepared to meet with us to discuss them." The Local enclosed in this letter what it called "Proposals for a New Contract," nine in number, constituting variants from the corresponding terms of the existing contract.

On April 8, 1948, the United Automobile, Aircraft and Agricultural Implement . Workers of America, CIO, filed a petition with the Labor Board for certification as exclusive bargaining representative with the employer; and on April 12 the defendant, who was the regional director, notified the Local of this petition and stated that it had been named as an intervenor. On April 26 he set May 11 as the date for a hearing; but on May 4 he withdrew the notice of hearing, and on the next day he wrote advising the Local that it had not "complied with the provisions of Section 9 (f), (g) and (h) of the Act and therefore does not have status to object to the holding of a Consent Election, except if it is a party to a contract which, under Board policy, would be a bar to an election." He then mentioned the exchange of letters between the Local and the employer, and concluded: "Since the contract has been opened up for negotiation in this manner, under principles announced in prior Board cases, it is not a bar to the

holding of an election. The parties have executed a Consent Election Agreement. For the reasons stated above your request that I withhold approval is denied." The Local protested against this action both to the defendant and to the Board, but its protests were overruled; and without preliminary hearings, upon the consent mentioned in the defendant's letter, of the Automobile Union and the employer, he arranged for an election which took place on July 14, 1948, and at which the ballot contained only the name of the Automobile Union. That union received a very large majority of the votes; the Board certified it as the exclusive bargaining representative, and the employer has refused to deal with the Local. The plaintiff brought this action on May 14, 1948, and on the 18th moved for a temporary injunction, which the defendant countered by a motion to dismiss the bill. On June 14 the judge denied both the plaintiff's motion for an injunction and defendant's motion to dismiss the complaint; but on July 2, upon reargument, he dismissed the complaint; and the plaintiff has appealed from both decisions.

■■■ The first question is as to the jurisdiction of the District Court which the defendant disputes, invoking our decision in Fitzgerald v. Douds.[1] We there held that, since the only review of a "certification" proceeding under § 9 was as an incident to a petition to review an order of the Board under § 10, the remedy so created was exclusive; although we recognized that the result might be otherwise, if a constitutional question were raised. The plaintiff at bar does raise such a question; he asserts that the Local has a "property" right in the maintenance of its position as exclusive bargaining agent, and that this was substantially invaded by denying its privilege of a hearing upon the "investigation," preparatory to deciding whether an election should be called. If this assertion of constitutional right is not transparently frivolous, it gave the District Court jurisdiction; and, having once acquired jurisdiction, the

court might, and should, dispose of all other questions which arose, even though they would not have been independently justiciable.[2] Although, as will appear, we do not think that the Local was denied any constitutional right, we do think that its contention is not so plainly untenable that the District Court might not proceed to decide the other issues involved. The Local's interest in remaining the exclusive bargaining agent was of great importance to it, and to dispense with the "investigation" on the outcome of which depended the calling of an election, would imperil its position, even though it could not be "certified" upon an election. To do this without any hearing can plausibly be thought to be a denial of due process of law. We come therefore to the merits. Sections 9(g) and 9(h), although mentioned in the complaint, we shall ignore, confining our discussion to § 9(f) which, we think, of itself requires us to affirm the judgment. It declares that in the case of a "non-complying" union "no investigation shall be made by the Board of any question * * * concerning the representation of employees, raised by a labor organization under subsection (c) of this section." The plaintiff's position is two-fold. He first asserts that in denying the Local a hearing, the Board has misread the phrase, "question of representation," which should be limited to the election, and should not include any questions which may arise in the "investigation" that precedes it. This he fortifies by his constitutional argument arising from the denial of a hearing. He next asserts that, even though he is wrong as to the "investigation," in any event § 9(f) does not prevent a "non-complying" union from protecting its position as an existing agent by having its name on the ballot. We shall take up these positions in that order.

■■■ It can be most forcefully argued that the "question of representation" is not to be divided into two parts: the preliminary "investigation" to decide whether there shall be an election, and the election

---

[1] 2 Cir., 167 F.2d 714.

[2] Hillsborough Township, Somerset County v. Cromwell, 326 U.S. 620, 66 S. Ct. 445, 90 L.Ed. 358.

itself. If so, as soon as a union files a petition under § 9(c) (1) (A) (i), as the Automobile Union did, asking to be designated the exclusive bargaining agent, a single and continuing "question of representation" is "raised": i. e. whether it shall be "certified" as such representative, to the indivisible answer to which all that follows is a part. The Board must "investigate" to see whether the petition is well enough founded to proceed further; if it so concludes, it must cite into an "investigation" all interested parties; and their objections at the ensuing hearings are "questions of representation" "raised" within the meaning of § 9(f). Certainly that is a most persuasive interpretation. Moreover, it fits well upon the purpose of § 9(f). The privilege of becoming an "exclusive bargaining" agent is altogether distinct from the common-law right of workmen to combine; it is a creature of Congress to whose grant Congress was therefore free to attach such conditions as it saw fit. It has seen fit to deny the privilege to unions which will not disclose their affairs, as § 9(f) prescribes. The plaintiff's argument must therefore be that this condition applies only to prevent such a union from becoming an exclusive bargaining agent, but does not prevent it from objecting to an election or, if one is called, from defeating any rival. The result would be that a "non-complying" union which was already the agent, could succeed in maintaining its position as such. We cannot conceive why Congress should have intended to allow recalcitrant unions to maintain the status quo. Those considerations which made it desirable to require publicity to unions seeking new authority, must surely make equally desirable publicity in the case of unions that are to continue an existing authority.

■ However, in the case at bar we need not definitely commit ourselves to this reading of the section. Arguendo, we will take the plaintiff's position that there are situations in which a "non-complying" union may insist upon intervening and being heard in an "investigation." One of these on this hypothesis would be when there is a "contract bar." By a

practise which went back of the Taft-Hartley Act, the Board had refused to order an election in cases where there was a contract outstanding between an employer and a union. The plaintiff's position is that, since this practise was in effect incorporated in the Act, it was contrary to § 9(c) and contrary to the Constitution to deny a hearing as to whether the "bar" had been "lifted," and he insists that this is exactly what the defendant did. On the other hand, though we assume that the "contract bar" is, as it were, written into the statute, it is so written in its entirety, and that includes the condition that it is "lifted," as soon as the parties to the contract begin to negotiate for a new contract. If so, the only issue, as to which the defendant deprived the Local of a hearing, was whether it and the employer had entered upon a negotiation for a new contract; if they had, the "bar" had been lifted; there were no other parties entitled to intervene; and it was proper to call an election under the consent agreement of the Automobile Union and the employer.[3]

■ The defendant decided that the parties had entered into a negotiation after examining the letters of February 20 and 26, and apparently also that of March 4 with its enclosure. There was no possible debate that, standing alone, his was the only rational interpretation. The letters were not evidence of negotiation; they were negotiation in themselves. Indeed, they expressly stated that they were in conformity with the Taft-Hartley Act, the proviso to § 8(d) of which requires any party to a bargaining agreement to propose a meeting "for the purpose of negotiating a new contract," if he would "terminate or modify" an existing one. Nevertheless, we will assume that, if the Local had claimed to have evidence which met this apparently incontestable conclusion, the defendant should have granted it a hearing. It did nothing of the kind. The attorney's letter of May 7, 1948, to the chairman of the Board,—written after the defendant had declared his position on May 5—although it vehemently protested against what it called a determination "not

---

[3] § 9 (c) (4).

only unseemly, but unconstitutional, illegal and improper," with other rhetorical flourishes, nowhere intimated that the Local had any evidence to contradict or qualify the force of the letters. It merely demanded an unparticularized "right to produce and cross-examine witnesses." Nor was that all. Although in this action both parties presented affidavits, nowhere has the plaintiff specified any evidence which he could produce that would bear upon whether negotiations had been opened.

Upon such a record the defendant's denial of any hearing was right. Neither the statute, nor the Constitution, gives a hearing where there is no issue to decide; and in the face of the correspondence it rested upon the Local at least to suggest some circumstances which would meet the case against it, to all appearances impregnable. The Constitution protects procedural regularity, not as an end in itself, but as a means of defending substantive interests. Every summary judgment denies a trial upon issues formally valid. Where, as here, the evidence on one side is unanswerable, and the other side offers nothing to match or qualify it, the denial of a trial invades no constitutional privilege. These considerations are particularly appropriate when we consider that the Board must conduct its duties in a summary way; not, we hasten to add, without observing all the essentials of fair administration, but with as much dispatch as is consistent with those.

It is true that the plaintiff argues that there were other questions which might rise for "investigation," had there been hearings: issues of a delicate character, not subject to rigid treatment, and leading far afield. If there be any such, we do not know what they are; none appeared in the letter of May 7, 1948; none in the affidavits. The plaintiff does not suggest that there was any doubt that the "question of representation" did "affect commerce"; he does not suggest that the proposed election was to be determined by a different "unit" from the old; nor could he do so, for no change, so far as appears,

was proposed in the "unit" from that under which the Local held its own authority. Nebulous and declamatory assertions, wholly unspecified, must not stand in the path of an effective discharge of the Board's duties, of the "certification" of an agent who would have authority to act, other than as a "hold-over."

We have so far confined our discussion to the plaintiff's argument, directed against the defendant's refusal to conduct an "investigation" at which the Local should be heard. There remains his denial to the Local of a place upon the ballot. As we have said, we do not understand that the plaintiff asserts that the Local, as a "non-complying" union, was entitled to be "certified"; that was authoritatively decided in National Maritime Union v. Herzog.[4] His position is that, if there was to be an election at all, the Local was entitled to a place on the ballot in order to prevent the election of the Automobile Union. Whatever may be thought as to whether a "question of representation" begins before the election takes place, and is "raised" under § 9(f) when an intervener makes an objection at an "investigation," we cannot understand how it can be supposed not to begin at least when the votes are being cast. Certainly, Congress cannot have intended that there should be a stale-mate, the old agent stepping down, but yet able to prevent the election of a successor. And the argument that a "non-complying" union should be allowed to hold over as exclusive agent by defeating its rival, we have already answered. To repeat, no reason could have induced Congress to deny the right of "certification" to a "non-complying" union, which would not forbid its retaining its position as a formerly "certified" agent. Whether the purpose of disestablishing unions which insist upon keeping their affairs secret is wise or foolish, is not for us; our only duty is to interpret the commands of Congress with that purpose in mind; we must not mutilate it by half measures. We need not construe the decision in National Maritime Union v. Herzog, supra,[5] as holding more than that the "non-complying" union was

---

[4] D.C., 78 F.Supp. 146, affirmed 334 U. S. 854, 68 S.Ct. 1529.

[5] D.C., 78 F.Supp. 146, affirmed 334 U. S. 854, 68 S.Ct. 1529.

not entitled to be "certified." One thing at least is clear: if the denial to such a union of the right to be "certified" is constitutional, so is the denial to it of a place upon the ballot. The rest is a matter of statutory construction.

Judgment affirmed.