**WORTHINGTON PUMP AND MACHINERY CORP. v. DOUDS et al.**

Civ. No. 66–80.

United States District Court
S. D. New York.

May 18, 1951.

Shearman & Sterling & Wright, New York City (Thomas F. Fennell II, Monroe S. Singer, New York City, of counsel), for plaintiff.

George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, Dominick L. Manoli, and Abraham Maller, Attys., National Labor Relations Board, all of Washington, D. C., for defendant Charles Douds.

IRVING R. KAUFMAN, District Judge.

This is a motion by plaintiff Worthington Pump and Machinery Corporation for a preliminary injunction restraining defendant Charles Douds, Regional Director for the Second Region, National Labor Relations Board, from issuing a certification that defendant International Brotherhood of Firemen, Oilers, Helpers and Maintenance Men, Local 55, A. F. of L. (hereafter Local 55) is the collective bargaining agent for 28 powerhouse and yard employees in plaintiff's Harrison, N. J. plant. The motion arises out of plaintiff's suit for a declaratory judgment as to the validity of its contract with United Steel Workers of America, C. I. O., Local 1833 (hereafter Local 1833).

Defendant Douds brings a cross motion to dismiss plaintiff's complaint on the grounds that this court lacks jurisdiction over the subject matter and that the National Labor Relations Board members should have been joined as indispensable parties. He opposes plaintiff's motion, alleging that plaintiff has suffered no irreparable injury warranting the issuance of an injunction.

Since 1937, Local 1833 has been the collective bargaining agent for about two thousand hourly rated workers at plaintiff's Harrison Works. On June 15, 1950, the then existing collective bargaining contract between the union and plaintiff expired and a new contract expiring June 15, 1952 was entered into. On the same day, June 15, 1950, Local 55 filed a petition with defendant Douds requesting an election to determine the collective bargaining representative of 23 powerhouse employees at the Harrison Works. On July 11, 1950, Local 55 filed a similar petition with Douds on behalf of 5 yard workers at Harrison.

The new contract between plaintiff and Local 1833 included a union security clause which stated that it would become operative "If and when the union complies with that section of the Labor Management Relations Act of 1947 concerned with elections for Union Shop." In accordance with sections 8(a)(3) and 9(e) of the Taft-Hartley Act, 29 U.S.C.A. §§ 158(a)(3), 159(e), Local 1833 filed a petition with Douds asking that an election be held to determine whether the workers covered by the new agreement authorized the union to make such a clause. The petition was granted June 23, 1950, the election took place July 12, 1950, and on July 20, 1950 Douds certified that a majority of employees in the bargaining unit had authorized Local 1833 to make the union security agreement in conformity with the Act.

Hearings on Local 55's petition for an election were held in Doud's office during October and November, 1950. It appears that the sole issue raised by Local 55 was whether or not the new agreement entered into by the company and Local 1833 took effect on or after June 15, 1950. Local 55 contended that the agreement dated June

15, 1950 did not in fact become operative until some time after that date when it was approved by Local 1833's parent organization, the United Steel Workers of America, and it therefore could not be a bar to Local 55's petition dated June 15, 1950. Apparently no question was raised at this proceeding as to the illegality of any provision of the agreement.

On February 28, 1951, the National Labor Relations Board handed down a decision in which it held that the union security clause of the collective bargaining agreement became "operative" when the board certified the employee's authorization of such a clause on July 20th, that the clause was illegal as being broader in scope than the union security clause permitted by the Taft-Hartley Act, and that therefore the whole collective bargaining agreement was illegal and ineffectual as a bar to the election petition of Local 55. Plaintiff thereafter applied for a rehearing and permission to be heard on the validity of the union security clause. The Board denied the application. On March 30, 1951, an election was held under Doud's supervision and a majority of the powerhouse and yard workers voted in favor of representation by Local 55. Plaintiff then initiated action in this court for a declaratory judgment under Title 28, U.S.C. §§ 2201–2202 on the validity of the contract and now asks for an injunction pending outcome of that suit.

Defendant Douds challenges the court's jurisdiction over the subject matter of this action. He contends that the Taft-Hartley Act provides an exclusive method of review of representation proceedings under sections 9 and 10, 29 U.S.C.A. §§ 159, 160, and that the federal district courts have no jurisdiction to review such matters. He argues further that having failed to exhaust its administrative remedies, there is no basis on which the plaintiff can invoke the court's jurisdiction.

Plaintiff concedes that its method is not the normal procedure under the Act for reviewing certifications. Cf. American Federation of Labor v. N. L. R. B., 1940, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347, but it contends that the "review" granted in the Act is not only inadequate but illusory in this case, and that since it presents constitutional questions, the district court has jurisdiction to grant equitable relief. See A. F. of L. v. N. L. R. B., supra, 308 U.S. at page 412, 60 S.Ct. 300, 84 L.Ed. 347.

The method allegedly open to the plaintiff to contest the Board's decision is as follows: The plaintiff can refuse to bargain with Local 55 when it is certified and thereby plaintiff is open to an unfair labor practice charge. 29 U.S.C.A. § 158(a)(5). As an incident to the hearing of such charge by the Board, and upon reveiw by a United States Court of Appeals, the certification of Local 55 can be inquired into. 29 U.S.C.A. §§ 159(d), 160.

The fallacy in this method of "review" is that the plaintiff must await an unfair labor practice charge by Local 55, and plaintiff argues that Local 55 will not file such a charge, but will use its economic strength to enforce its position as bargaining agent. Furthermore plaintiff may have to commit in good faith an unfair labor practice in order to gain such possible review, thereby subjecting itself to grave risks under the Act.

Plaintiff contends it does not have to rely on such a speculative appeal when a constitutional question is involved. Defendant Douds denies any exception to the employer's regular administrative recourse and further denies the existence of a constitutional question. Both parties rely heavily on the decision of the Court of Appeals for the Second Circuit in Fay v. Douds, 1949, 172 F.2d 720.

In that case, a union petitioned the district court to enjoin the Board from holding an election or certifying a competitor union. Although the Court of Appeals ultimately sustained the lower court's judgment denying the petition, it upheld the district court's jurisdiction to hear the matter. Judge Learned Hand stated in that case: "The first question is as to the jurisdiction of the District Court which the defendant disputes, invoking our decision in Fitzgerald v. Douds, 2 Cir., 167 F.2d 714. We there held that, since the only review of a 'certification' proceeding under § 9 was as an incident to a petition to review an order of the Board under § 10, the reme-

dy so created was exclusive; *although we recognized that the result might be otherwise, if a constitutional question were raised.* The plaintiff at bar does raise such a question; * * * *If this assertion of constitutional right is not transparently frivolous, it gave the District Court jurisdiction* * * *. Although, as will appear, we do not think that the Local was denied any constitutional right, *we do think that its contention is not so plainly untenable that the District Court might not proceed to decide the other issues involved.* (Emphasis added.) 172 F.2d at page 723.

Plaintiff herein contends that it raises constitutional questions which are not frivolous. It claims that the Board's decision on an issue not raised in the hearing and its subsequent denial of a rehearing on that issue was an unconstitutional denial of procedural due process. As a result plaintiff says its contractual and property rights, in particular its allegedly valid contract with Local 1833, have been assailed and nullified by what it calls the Board's "arbitrary disregard" of its constitutional rights.

Defendant Douds replies that there is no merit to plaintiff's constitutional question. He states that plaintiff had adequate notice that the 1950 agreement with Local 1833 was being challenged as not constituting a bar to the election. The fact that the Board's decision was based on surprise grounds, he says, was not want of due process and he cites Market St. R. Co. v. R. R. Commission, 1945, 324 U.S. 548, 65 S.Ct. 770, 89 L.Ed. 1171, to support this. The case is not in point. The plaintiff there had a proper hearing. In the case at bar, however, the question of the contract's illegality was avowedly never in issue. In its brief, submitted to the Board, Local 55 declared: "The petitioners (Local 55) do not here claim in any respect that the contract by its terms or conditions, violates any of the rights of individual employees covered thereby, existing by virtue of any state or federal law." The only question argued in the hearing before the Board was whether or not Local 55's petition antedated the effective date of the contract entered into by plaintiff and Local 1833. The status of the contract as a bar was of course in issue but the critical feature of the dispute was solely the date the contract took effect. Yet when the Board based its decision on the illegality of the union security clause and plaintiff petitioned for a rehearing and an opportunity to argue that point the Board denied the petition.

Defendant Douds however denies that there is any substance to the constitutional argument. He cites Fay v. Douds, supra, 172 F.2d at page 725: "Neither the statute, nor the Constitution, gives a hearing where there is no issue to decide * * *. It rested upon (the plaintiff) * * * to suggest some circumstances which would meet the case against it * * *. The Constitution protects procedural regularity, not as an end in itself, but as a means of defending substantive interests. * * * Where, as here, the evidence on one side is unanswerable, and the other side offers nothing to match or qualify it, the denial of a trial invades no constitutional privilege."

In that case, despite violent protests against the Board's action the plaintiff offered no more than "rhetorical flourishes" to contradict the Board's ruling. Defendant here intimates that the plaintiff's position is analogous. At no time, he states, did plaintiff proffer evidence which affects the Board's decision. Yet by Doud's admission, plaintiff's request for a rehearing asked "an opportunity to take and submit evidence on the issue of the union security clause, the intent and interpretation thereof by the parties to the contract and a further opportunity to argue the legality of such clause."

I think the due process question inherent in such a denial raises a substantial enough constitutional issue to remove it from Judge Hand's designation of matters "transparently frivolous". Cf. Carter v. Kubler, 1943, 320 U.S. 243, 64 S.Ct. 1, 88 L.Ed. 26; Morgan v. U. S., 1938, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129; Jordan v. American Eagle Fire Ins. Co., 1948, 83 U.S.App.D.C. 192, 169 F.2d 281.

Defendant Douds further contends that the extrastatutory remedies suggested by

Judge Hand in Fay v. Douds, are applicable only to unions. He argues that a union adversely affected by an NLRB ruling has no judicial review under the Act. Where its grievance takes on constitutional stature, he says, justice requires that the union be allowed to seek appropriate relief in the courts, but an employer similarly aggrieved acquires no such right. In his brief he states: "The denial to the union of a right of constitutional stature, it was felt, was of such importance that it could not reasonably be inferred that Congress intended it to go unredressed by appropriate judicial review in the District Courts. But an employer suffers under no such disability in being denied access to the district courts; he is afforded judicial protection against any invasion of his rights, constitutional or statutory, in representation proceedings by the provision for judicial review in the Circuit Courts of Appeal which the Act contains for review of Board unfair labor practice orders based upon a prior determination of the Board in representation proceedings."

I believe that defendant's argument is based on a formalistic distinction which in fact does not vary the substantive similarities between a union and an employer alleging an abridged constitutional right. The employer has a definite judicial remedy under the Act only if the union (in this case Local 55) actually files an unfair labor practice complaint with the Board. But there is a considerable likelihood that the union will ignore the National Labor Relations Board, relying on economic pressure, through strikes, to force the employer to bargain collectively. A properly certified union may of course validly follow such practices but the plaintiff herein seeks *some* forum for review of the impending allegedly unauthorized certification.

The interplay of economic strength between management and labor was certainly contemplated by the drafters of the Act. A sort of privileged combat has always been fundamental to our free economic system. But where one of the combatants has, through some unconstitutional act, been stripped of its bargaining strength, the action has moved beyond the bounds of the Act and the injured party may seek necessary relief in the courts. Whether the injury effects an employer or a union, the decisive factor is its unconstitutional nature. I am aware that the cases cited, in which the district court's jurisdiction has been upheld, have all involved complaining unions. Klein v. Herrick, D.C.S.D.N.Y.1941, 41 F.Supp. 417; Fitzgerald v. Douds, 2 Cir., 1948, 167 F.2d 714; Fay v. Douds, supra. I can, however, see no validity in distinguishing between a union and an employer in these cases. There is no equity in guaranteeing a remedy in the courts to a union which has suffered a constitutional wrong, but under analogous circumstances, restricting an employer to an uncertain statutory remedy. In this conclusion I am fortified by Judge Hand's statement in Fay v. Douds, that if the assertion of a constitutional right is not transparently frivolous, the district court has jurisdiction. Nowhere can I find support, express or implied, for the contention that this right is limited to a union. It should be noted that the Taft-Hartley Act was specifically designed to grant employers protection not afforded them in the Wagner Act, and thereby minimize any differences in rights granted unions or employers. See 29 U.S.C.A. §§ 151, 158. This should guide the Court in protecting asserted constitutional rights on behalf of an employer. I find therefore that this Court has jurisdiction to hear plaintiff's cause of action.

The sufficiency of plaintiff's motion for a preliminary injunction remains. Plaintiff alleges that if the Board certifies Local 55, it will suffer irreparable injury of the kind that equity can and should enjoin. Defendant answers that equity will not recognize the alleged injury.

Since the court has equity jurisdiction over the subject matter, it may grant whatever relief equity dictates. Irreparable injury deserving of injunctive relief is a variable determination. Plaintiff must make a showing of irreparable injury within the circumstances of this action. Plaintiff has not done this. It

has, in its brief, drawn a picture of inexorable grief which will follow if the Board is allowed to certify Local 55. It alleges that the members of the unit will strike, and since powerhouse workers are among them, that the strike will shut down plaintiff's Harrison plant, throwing other thousands of employees out of work. The certification will, it is further contended, set dissension creeping through the plant and other splinter groups will seek independent union recognition. The company will be exposed to a barrage of representation suits, crippling its efficiency. This, says plaintiff, is irreparable injury which must be avoided by an injunction against the Board.

I cannot accept such rampant speculation as basis for granting this motion. It is possible that plaintiff, following the Board's certification, will be subjected to economic pressure. The potential injury is too remote and speculative at this time to merit injunctive action against the Board. Klein v. Herrick, supra; S. Buchsbaum & Co. v. Beman, D.C.N.D.Ill.1936, 14 F.Supp. 444. The power to issue an injunction is extraordinary and should be used with moderation and only in a clear and plain case. Irwin v. Dixion, 1850, 9 How. 10, 50 U.S. 10, 13 L.Ed. 25. Courts of equity should not use the extraordinary remedy of injunction merely to allay litigants' fears. Northrop Corp. v. Madden, D.C.S.D.Cal. 1937, 30 F.Supp. 993; Skelly v. Dockweiler, D.C.S.D.Cal.1947, 75 F.Supp. 11. The courts are in complete agreement that the issuance of an injunction even after trial is a singular and unusual remedy to be exercised sparingly. Upon a motion for a temporary injunction, a fortiori, there should be greater reluctance to exercise this drastic power of injunction by a mere appraisal of affidavits which leave doubt as to whether plaintiff's fears are real and imminent or are speculative and based merely upon apprehension of future injury which may never result.

While I am denying plaintiff's motion for a temporary injunction, plaintiff may apply, if it so desires, for a trial preference. I do not anticipate that plaintiff will, upon a proper showing, have difficulty in securing such preference.

Defendant's motion to dismiss the complaint on grounds that plaintiff has failed to make members of the National Labor Relations Board parties to this action although they are indispensable has now been mooted. The motion was based on objections to the conduct of the election filed by Local 1833. Defendant Douds alleged that such objections removed his authority to issue a certification and vested that authority exclusively in the Board. Those objections have now been withdrawn and the issue is closed.

The motion for temporary injunction is denied.

The cross motion to dismiss the complaint is also denied.