## IDEAL ROLLER & MANUFACTURING CO., Inc. v. DOUDS.

United States District Court
S. D. New York.
April 2, 1953.

Bannister, Stitt, Holloway & Krause, New York City, for plaintiff. Edward W. Stitt, Jr., New York City, of counsel.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Nor-man Somers, Asst. Gen. Counsel, Norton J. Come and Robert G. Johnson, Attys., National Labor Relations Board, Washington, D. C., for defendants.

McGOHEY, District Judge.

In this suit an employer alleging violation of constitutional rights seeks to enjoin the Regional Director of the National Labor Relations Board from holding a representative election by three of the plaintiff's employees as directed in the Board's order made pursuant to section 9(c) (1) of the Labor Management Relations Act of 1947.[1] By order to show cause which also stayed the election, the plaintiff moves for a preliminary injunction. The defendant by cross motion seeks dismissal of the complaint or summary judgment in his favor. The asserted grounds of dismissal are the Court's lack of jurisdiction of the subject matter and failure to plead a claim on which relief may be granted.

■ Review of a certification proceeding under section 9 can be had only as an incident to review of an order of the Board under section 10,[2] except in a case where the plaintiff raises a constitutional question which is "not * * * plainly untenable."[3]

This complaint alleges that the defendant is expressly forbidden by section 9(c) (3) of the Act[4] to make the challenged order; and that if such "unlawful" order is carried out it will result in depriving the plaintiff, without due process, of rights granted to it under §§ 9(c) (3) and 303[5] of the Act, to the plaintiff's irreparable damage. In an affidavit in support of the motion, the plaintiff further claims that it was denied "a full and fair hearing" by the Board on the subject of the challenged order. The alleged unfairness of the hearing was not pressed either in briefs or argument and there is a total absence of facts to support the charge. In any event, I do not reach it here. Under Fay v. Douds, this Court would have jurisdiction to review that charge only if

1. 29 U.S.C.A. § 159(c) (1).

2. 29 U.S.C.A. § 160.

3. Fay v. Douds, 2 Cir., 172 F.2d 720, 723.

4. 29 U.S.C.A. § 159(c) (3).

5. 29 U.S.C.A. § 187.

the complaint raised a "plainly tenable" constitutional question, and, as hereafter appears, I think the plaintiff has failed to do so.

The undisputed facts are as follows. Plaintiff manufactures printers' and mechanical rollers. It employs about eighty-five persons, of whom three are licensed engineers. From 1945 until October 30, 1952, the International Association of Machinists (hereinafter referred to as I.A.M.) had acted as representative for all the employees. On September 5, 1952, a committee of employees, not including the engineers, filed a petition with the Board alleging that the I.A.M. was no longer the employees' representative and requesting a decertification election. On September 16, 1952, the International Union of Operating Engineers (hereinafter referred to as I.U.O.E.) filed a petition seeking a representation election as to the three licensed engineers only. This raised the preliminary question whether one or two units were appropriate to the plant, and on October 13, 1952, both petitions were consolidated for hearing on that question as well as decertification.

Because the then existing bargaining agreement between the employer and I.A.M. was to expire on November 8, it was considered desirable by all concerned to determine I.A.M.'s status before that date. Accordingly, with the Board's consent, the plaintiff, I. A. M. and the petitioners in the decertification petition agreed to hold the decertification election on October 30, without a prior hearing. The "Consent Election Agreement" included the following stipulation:

"Since Case 2–RC–5168, now pending before the Board, involves the issue of a separate unit of operating engineers, employees employed in that classification shall vote under challenge, and their ballots shall be impounded pending determination by the Board of that case, and shall then be dealt with in accordance with the Board's decision. This action is without prejudice to the position of any of the parties in Case 2–RC–5168."

None of the engineers participated in the election on October 30 which resulted in I.A.M.'s decertification. In the meantime, hearings in which the plaintiff participated were begun on the I.U.O.E. petition (Case 2–RC–5168). On December 22, 1952, the Board found that the three engineers constituted a separate craft unit appropriate for collective bargaining and made the challenged order for an election to be held on January 19, 1953, to determine the fact of I.U.O.E.'s representation of that separate unit.

■ The constitutional argument runs as follows. The Taft-Hartley Law, § 303 [6] created and granted employers a "new right" to sue for damages, [sub-div. (b)], resulting from a secondary boycott conducted by an "uncertified" union; the proposed election, though prohibited by section 9(c) (3), will probably result in the certification of I.U.O.E. which will then as a "certified" union "be able to maintain a secondary boycott [section 303(a) (2)] without legal objection by the plaintiff," since the latter cannot initiate review under section 10.[7] Section 9(c) (3), so far as here relevant, provides, "No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held." The plaintiff argues that the three engineers were included in the bargaining unit in which the decertification election was held October 30, 1952, or at least they constituted a subdivision of it and thus cannot have "another" election within twelve months. The undisputed facts refute that argument. In the decertification proceeding the engineers actually and effectively disassociated themselves from the rest of the plaintiff's employees who petitioned for it and thereafter abstained from voting on the question. Furthermore, the plaintiff stipulated with all others concerned in that election that holding it was to be "without prejudice to the position of the parties in Case 2–RC–

---

6. 29 U.S.C.A. § 187.

7. 29 U.S.C.A. § 160.

5168" which was the petition of I.U.O.E. to represent the engineers. Moreover, the plaintiff's interpretation of the section would require this newly created craft unit in which no election has ever been held, to be unrepresented for a year;—a result quite inconsistent with the statute's aim of "encouraging the practice and procedure of collective bargaining." [8] Congress cannot be held to have so deliberately frustrated its own declared purpose. There can be no fair doubt, I think, that under section 9(c)(3) the craft unit of engineers is separate from and independent of the other employees' bargaining unit in which the decertification election was held, and that therefore the challenged order is not prohibited by that section.

The secondary boycott argument is also unsound. In the first place, it assumes that if I.U.O.E. is certified as the engineers' representative there will be no fair attempt to bargain for a collective agreement. The plaintiff is, no doubt, competent to predict what it will do but no facts are alleged to show its competence to forecast the union's conduct. And there is nothing whatever in the papers before me to justify the suggestion that the union will not attempt fairly to negotiate an agreement. The argument next assumes that if negotiations do not occur or if they fail, the union will not file a charge of unfair labor practice with the Board, thus affording the plaintiff an avenue of review under section 10 of the Act.[9] On the contrary, it is assumed the union will at once attempt by strikes to force newspaper publishers and other customers to refuse to buy from the plaintiff, and thus force the latter to come to terms. This again is the sheerest speculation, without support of any kind in the papers. Lastly, the argument assumes that under section 303 [10] an employer may not sue for damages on account of such a secondary boycott, even if the offending union is "illegally certified." This assumption might raise a serious question, if it were valid, but it is not. It ignores the express language of subsection (a) (2) of § 303 which exempts only

"such labor organization [as] has been certified * * * under the provisions of section 9 * * *." That clearly means only a union whose certification was made in conformity with and not in violation of the section.

From the foregoing examination of the plaintiff's claim of violation of constitutional rights, I conclude that it lacks substance and is untenable. Accordingly, the plaintiff's motion for a temporary injunction is denied, the stay is vacated, and the defendant's motion to dismiss is granted.

Settle order.