UNITED FEDERATION OF COLLEGE TEACHERS, LOCAL 1460, and American Federation of Teachers, AFL–CIO, Plaintiff-Appellant,

v.

Edward B. MILLER et al., Defendants-Appellees.

No. 709, Docket 73–1091.

United States Court of Appeals, Second Circuit.

Argued March 8, 1973.

Decided May 15, 1973.

Wyzanski, Senior District Judge, dissented with opinion.

Judith P. Vladeck, New York City (Vladeck, Elias, Vladeck & Lewis, Stephen C. Vladeck and Deborah Watarz, New York City, on the brief), for plaintiff-appellant.

R. Bruce McLean, Washington, D. C. (Peter G. Nash, Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixsen, Chief of Special Litigation, and Abigail Cooley Baskir, Atty., N.L.R.B., on the brief), for defendants-appellees.

Before LUMBARD and TIMBERS, Circuit Judges, and WYZANSKI, District Judge.[*]

LUMBARD, Circuit Judge:

 United Federation of College Teachers, Local 1460 ("Union") appeals from an order of the Eastern District dismissing for lack of jurisdiction its action against defendants Miller, Fanning, Pennello, and Kennedy, in their capacities as members of the National Labor Relations Board. The Union had sought an injunction preventing the N. L.R.B. from effectuating its order of July 27, 1972, which directed the N.L.R. B. Regional Director for the 29th Region to count certain disputed ballots that had been cast in a representation election among professional employees at the C. W. Post Center of Long Island University ("C. W. Post"). In dismissing the action, the district court, 359 F. Supp. 76, relied on the general rule that an action to review a representation proceeding is not ordinarily within the competence of a district court. Herald Co. v. Vincent, 392 F.2d 354, 357 (2d Cir. 1968). It has long been held that N.L.R.B. certification proceedings do not result in reviewable final orders. A.F.L. v. N.L.R.B., 308 U.S. 401, 60 S. Ct. 300, 84 L.Ed. 347 (1940). Review is ordinarily permitted only after the N.L. R.B. enters a final order in an unfair labor practice proceeding in reliance on its resolution of the certification proceeding; and then review lies in the court of appeals, not in the district court. 29 U. S.C.A. § 160(e).

There are several recognized exceptions to this general principle, two of which the Union believes support district court jurisdiction in this case: 1) a district court may intervene when the N.L.R.B. has acted contrary to a specific mandate of the National Labor Relations Act (Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958)); and 2) the district court has jurisdiction of a cause of action that asserts a violation of constitutional rights that is not transparently frivolous (Fay v. Douds, 172 F.2d 720 (2d Cir. 1949)). The district court considered both of these exceptions and found them inapplicable here. For the reasons stated in this opinion we agree with the district court

[*] Senior District Judge of the District of Massachusetts sitting by designation.

and we affirm its order dismissing for lack of jurisdiction.

In June 1970, the Union sought to be certified by the N.L.R.B. as the collective bargaining agent for all the full- and part-time instructional staff at C. W. Post. Since the Board had only recently decided to assert jurisdiction over private non-profit colleges and universities, the Union's petition was the first in which the Board had to consider what constituted an appropriate bargaining unit for a professional instructional staff. One question that arose in this connection was the propriety of including in the same bargaining unit both full-time faculty members and part-time faculty members, who are known as "adjuncts." The Board concluded that both should be included in the same bargaining unit and directed that a representation election be held among the employees in this unit at C. W. Post. In its order, the Board stated that the bargaining unit included "[a]ll professional employees employed at the Employer's C. W. Post Center." In its accompanying Direction of Election, the Board stated:

> Eligible to vote are those in the unit who were employed during the payroll period immediately preceding the date below (April 20, 1971), including employees who did not work during that period because they were ill, on vacation, or *temporarily laid off*. (emphasis added)

In accordance with the Board's order, the Regional Director issued an official Notice of Election. The Notice described the voting unit as follows:

> All professional employees employed at the Employers C. U. Post (sic) Center . . . including professors, associate professors, assistant professors, instructors, adjunct professors, adjunct associate professors, adjunct assistant professors . . .,

who appear on the Employer's payroll as of March 31, 1971.

In addition, the Notice stated the following eligibility rules:

> Employees eligible to vote are those described under VOTING UNIT in this Notice of Election, including employees who did not work during the designated payroll period because they were ill or on vacation, or temporarily laid off.

In the election, which was conducted May 10 and 11, 1971, 214 ballots were cast for the Union, 208 against the Union, 47 were challenged, and one was voided. Nineteen[1] of the challenged ballots were cast by adjunct faculty members who had taught in prior semesters but were not teaching during the semester in which the election was held. Because the number of disputed ballots was sufficient to determine the outcome of the election, hearings were held after the election to determine the eligibility of the challenged voters. For purposes of this appeal, the focus will be on the challenged ballots cast by adjunct faculty members not teaching during the semester in which the election was held. The Hearing Officer recommended that these challenges be sustained. On July 27, 1972, the Board rejected the Hearing Officer's recommendation and ordered the Regional Director to count these ballots. After unsuccessfully attempting to persuade the Board to reconsider its decision or, in the alternative, to order a new election, the Union brought this action in the district court.

The Union attempts to characterize the Board's decision holding the challenged voters eligible as a retroactive change in the eligibility rules after the election. The Union contends that, in so acting, the Board ignored its statutory responsibility under § 9(a), (b), and (c) of the N.L.R.A., 29 U.S.C.A. § 159(a)(b), and (c), to select an appro-

---

1. There appears to be some confusion about whether the challenged adjunct ballots were twenty-one or nineteen in number. In its decision, the Board apparently felt it was considering challenges to nineteen ballots, and we shall assume that is the correct figure, although the number is not crucial.

priate bargaining unit, direct an election in that unit, and determine that representatives are chosen by a majority of employees in that unit, thus giving rise to jurisdiction in the district court under the rule of Leedom v. Kyne, *supra*. In addition, the Union argues that the Board's action threatens to deprive the Union of its right to be designated as the exclusive bargaining agent for the professional employees at C. W. Post without due process of law, and will deny equal protection of law to those adjuncts who did not vote in reliance on the Board's stated eligibility rules, in violation of the fifth amendment, thus giving the district court jurisdiction of this action under the rule of Fay v. Douds, *supra*.[2] Since we cannot agree with the Union's characterization of the Board's action, we do not find the statutory and constitutional violations that the Union asserts.

The Union focuses on certain language used by the Board in its order fixing the appropriate bargaining unit and in its Direction of Election. First, the Union notes that the Board limited the bargaining unit to "[a]ll professional employees *employed* at the . . . C. W. Post Center." [emphasis added] In the Notice of Election subsequently issued by the Regional Director, this description of the voting unit was refined somewhat to include "[a]ll professional employees employed at the . . . C. W. Post Center . . . *who appear on the Employer's payroll as of March 31, 1971.*" [emphasis added] From this language, the Union concludes that the Board's eligibility rule before the election was quite simple: only those who were currently employed as members of the instructional staff at C. W. Post and were on the payroll as of March 31, 1971

could vote. Since the adjuncts who cast the disputed ballots did not fit within this category, the Union concludes that the Board's later decision permitting these votes to be counted constituted a retroactive change in the eligibility requirements.

Insofar as the Union's conclusion is drawn from its analysis of the Board's pronouncements before the election, it is accurate only as far as it goes. In its Direction of Election, the Board specified that eligible voters were those in the bargaining unit who were employed during the payroll period immediately preceding April 20, 1971 (apparently corresponding to March 31, 1971), "including employees who did not work during that period because they were ill, on vacation, or temporarily laid off." In the Notice of Election, which described the voting unit in terms of those employed and on the payroll as of March 31, 1971, the eligibility rules stated that "[e]mployees eligible to vote are those described under VOTING UNIT in this Notice of Election, including employees who did not work during the designated payroll period because they were ill or on vacation or temporarily laid off." Thus, it appears that the eligibility rules established by the Board before the election were not so simple as the Union contends. Indeed, when the pre-election pronouncements of the Board with regard to the appropriate bargaining unit and the eligibility requirements for the election are read together, as one would expect a prospective voter to do, they would appear to bring within the class of eligible voters in the bargaining unit some individuals who were not actually working at C. W. Post on March 31, 1971 if they fit within certain established categories.

2. With respect to the Union's due process claim, we note that it is not certain that the effectuation of the Board's order to the Regional Director to count the disputed ballots will necessarily result in the Union's being deprived of its asserted right to represent the employees. It is only if the ballots when counted cause the Union to lose the election that this will happen. Thus, the Union's due process contention is contingent at the moment. For purposes of this appeal, we shall assume the due process contention is properly before us and shall not consider whether its proper resolution should await the determination of this contingency.

It is evident from a reading of the Board's decision that, in considering the challenges at issue, the Board was concerned with whether "the Hearing Officer failed to give proper weight to language in the Direction of Election relating to 'temporarily laid-off employees' and Board precedent which deems laid-off employees eligible if they have a reasonable expectation of employment ·in the future." The Board concluded "that the Hearing Officer failed to give appropriate weight to the history of employment in past academic years of adjuncts in determining whether they had a continuing employment interest warranting their inclusion in the unit." It was then necessary for the Board to determine how much past history of employment was necessary to constitute a sufficient "continuing employment interest." In this regard, the Board said:

> From the record it appears that adjuncts are often reemployed annually contingent upon the availability of work. They sign contracts in advance which, while giving no assurance of employment, do accord the adjuncts individual faculty status and as such some expectation of employment during the contract term. Accordingly, receipt of an adjunct contract coupled with evidence of employment during the contract term would appear to be relevant factors in assessing eligibility. In our opinion, those who signed such a contract in at least 2 of the 3 consecutive academic years, inclusive of that in which the election is directed, and actually teach 3 or more credit hours in at least one semester in each of 2 such years have a sufficient employment history to establish a reasonable expectancy of reemployment to support eligibility in a Board-conducted election.

We are not persuaded by the Union's characterization of the Board's decision as a retroactive change in eligibility requirements. Because of the challenges, the Board was called upon to determine whether the particular challenged voters were within the class of "temporarily laid-off" employees that it determined *before the election* to be eligible to vote despite their not being on the C. W. Post payroll on March 31, 1971. It proceeded to find that 16 of the 19 challenged voters were within the eligible class and 3 were not. What the Board did here was not a retroactive expansion of the eligible voters. as the Union contends. Indeed, by restricting the number of adjuncts who could fit within the class of "temporarily laid-off" employees, the Board could more persuasively be said to have reduced the number of eligible voters.

■ Admittedly, there may have been some degree of ambiguity in the Board's pre-election determinations, in that the bargaining unit was defined in terms of employment on a stated date while the eligibility rules were more flexible as we have indicated. Although it may have been desirable for the Board to have been more precise in this regard, we do not believe that either the Union or any prospective voter could have been prejudiced by the potential ambiguity. We hold that the Union has raised neither a claim that the Board has violated a specific statutory mandate, which would give the district court jurisdiction under Leedom v. Kyne, *supra,* nor a substantial constitutional claim, which would supply jurisdiction under Fay v. Douds, *supra.* Rather, the Union's claim is that the Board's actions were arbitrary, unreasonable, and an abuse of discretion, for which review lies not in the district court, but in the court of appeals after the entry of a reviewable final order. Herald .Co. v. Vincent, 392 F.2d 354 (2d Cir. 1968); Consolidated Edison v. McLeod, 302 F.2d 354 (2d Cir. 1962).

■ The Union has argued that this case is. somewhat unusual in that, unless review is available in the district court, there will be no practical way in which it can secure judicial review of the Board's determination. However, the Board has noted that the Union may picket C. W. Post if it is determined to have lost the election. This would pre-

sumptively violate § 8(b)(7)(B) of the N.L.R.A., 29 U.S.C.A. § 158(b)(7)(B), and cause the Board to invoke its injunctive power under § 10(a), 29 U.S.C.A. § 160(a), which will result in a reviewable "final order by the Board . . . upon which the record of the certification proceeding becomes part of the record for review. . . ." Herald Co. v. Vincent, *supra*, 392 F.2d at 356. The Union has replied that it does not consider such suggestion as offering a practical route for reviewing the Board's order. However, the Union has offered no reason, and we see none, why this approach would not provide an adequate vehicle for eventual review of the Board's determination.

The Union makes the additional argument that the Board's supplemental decision on July 27, 1972 was an improper attempt at rule-making in which the Board did not comply with the prerequisites of the Administrative Procedure Act.[3] In support of this contention, the Union cites this court's recent decision in Bell Aerospace Co. v. N.L.R.B., 475 F.2d 485 (1973), in which the court disapproved a particular instance of the Board's formulation of policy by adjudication, and required it to proceed by rule-making. On this matter, the court said:

> Certainly the decision [N.L.R.B. v. Wyman-Gordon Co., 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)] does not proscribe the use of adjudication as a vehicle for the formulation of new agency policies, which "are applied and announced therein" and "generally provide a guide to action that the agency may be expected to take in future cases." . . . Although policy-making by adjudication often cannot be avoided in unfair labor practice cases, since the parties have already acted and the Board must decide one way or the other, there is no such problem in a representation case . . . [T]he argument for rule-making is especially strong when

the Board is proposing to reverse a long-standing and oft-repeated policy on which industry and labor have relied. 475 F.2d at 496–497.

We do not believe that *Bell Aerospace* is applicable here. In that case, the Board by means of adjudication had extended its jurisdiction to a class of employees who it had long taken the position were not covered, and this court indicated that such Board action should be effected through rule-making. However, *Bell Aerospace* should not be taken to mean that any policy determination in representation cases must be resolved by rule-making. For, although this is a representation case, it is also a case where "the parties have already acted and the Board must decide one way or the other." Furthermore, it is not a case where "the Board is proposing to reverse a long-standing and oft-repeated policy on which industry and labor have relied." Thus, the underlying rationale of *Bell Aerospace* would not require the Board here to proceed by rule-making.

In any event, the Union has not shown that a district court has jurisdiction to consider such a contention in a plenary action. We do not see that either Leedom v. Kyne or Fay v. Douds is applicable to such a case. Indeed, *Bell Aerospace*, on which the Union relies, would appear to work against it on the question of district court jurisdiction. In a footnote to the text quoted above, the court noted that "[w]hile nominally this case comes before us as an unfair labor practice case, in substance the attack is on the Board's decision, unreviewable at the time, in the representation proceeding." 475 F.2d at 496 n. 15. Thus, we conclude that the Union's contention that the Board should have proceeded here by rule-making did not raise a claim over which the district court could assert jurisdiction.

Accordingly, in light of our resolution of the issues involved, we affirm the

---

3. See 5 U.S.C.A. § 553.

**1080**

district court's order dismissing the Union's action for lack of jurisdiction.

WYZANSKI, Senior District Judge (dissenting):

As I read the record, the NLRB's April 23, 1971 Decision and Direction, as well as the NLRB's subsequent notice of election, stated that persons not employed and on the payroll on March 31, 1971 could not vote. That statement excluded 206 adjunct professors, most of whom presumably, would have been eligible to vote had the Decision and Direction, as well as the notice of election, embraced, as the NLRB's July 27, 1972 order did embrace, adjunct professors who on March 31, 1971 were not on the payroll of that date, but who, nonetheless, had a regular pattern of continuing employment on that date. Despite that statement, 19 of the apparently excluded 206 received ballots, and the NLRB, in its July 27, 1972 order, now under review, has directed that 16 of those ballots be counted and that on the basis of such count the NLRB issue its certification.

My view is that that July 27, 1972 order was in error because it permitted the counting of the 16 votes, or, alternatively, because it sanctioned the exclusion from notice and an opportunity to vote of the 187 adjunct professors who did not vote.

The exclusion of the 187 was, first, a violation of the statutory command, implied in Section 9(a), (b) and (c), which implicitly prescribed that the NLRB must not certify the results of an election based upon an eligibility roll larger than the standard of eligibles the Board announced before and at the election. It was, second, a violation of the due process clause of the Fifth Amendment to the United States Constitution because it denied to 187 persons notice and an opportunity to vote. The first violation gave jurisdiction to the District Court under the doctrine of Leedom v. Kyne, 358 U.S. 184, 188, 189, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). The second violation gave jurisdiction to the District Court under the doctrine of Fay v. Douds, 172 F.2d 720 (2nd Cir. 1949).