Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, For and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

SECURITY GUARDS AND WATCHMEN LOCAL UNION NO. 803, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, affiliated with Joint Council No. 16, I. B. of T., Respondent.

No. 71 Civ. 4762.

United States District Court,
S. D. New York.

Nov. 5, 1971.

Edwin H. Bennett, N.L.R.B. Region 2, New York City, for petitioner.

Howard Lichtenstein, Proskauer, Rose, Goetz & Mendelsohn, New York City, for Bloomingdales.

Eugene S. Friedman, Cohen, Weiss & Simon, New York City, for respondent.

## MEMORANDUM

BRIEANT, District Judge.

Petitioner, on behalf of the National Labor Relations Board ("N.L.R.B.") has applied for an injunction restraining respondent, pending final disposition of the matter currently before the N.L.R.B., from picketing the premises of Bloomingdales, a department store, at its branch at 59th Street in Manhattan or at any other location, where an object of such picketing is to force or require Bloomingdales to recognize or bargain with respondent as the representative of its security employees or to force or require Bloomingdales employees to accept or select respondent as their collective bargaining representative, unless and until respondent is certified as the representative of such employees pursuant to the provisions of Section 9 of the National Labor Relations Act [29 U.S.C. § 158(b) (7)].

A temporary restraining order was also sought but withheld in the discretion of the Court, conditioned on a prompt hearing of the motion.

This application may be granted upon a showing that there is reasonable cause to believe that respondent has engaged in the unfair labor practices charged, and that a complaint of the Board based on the charges will likely issue. Under such circumstances, petitioner is *required* by Section 10(*l*) of the Act to petition the Court for a temporary injunction against the continuation of the unfair labor practice until the Board has determined the matter.

There is no substantial issue of fact which must be determined in order to dispose of this application. The respondent has advised this Court that it has authorization cards signed by all or substantially all of the persons, numbering approximately 80 employees, whom it wishes to represent at Bloomingdales. It commenced recognitional picketing at the store on October 22, 1971. Such picketing continues to date, and will continue unless the injunction is granted. After the instant application was made to this Court, respondent filed a petition for certification with N.L.R.B. on November 1, 1971, in which it sought to include "all store detectives, checkers, guards and watchmen" in the bargaining unit.

We are advised that since commencement of the picketing on October 22nd, there have been no deliveries of inventory to this large retail store at which 4,000 other persons are employed, (most of them represented by a different union which has been certified as their collective bargaining representative). In addition, about 95% of the goods sold are required to be delivered and carriers of such goods, presumably also affiliated with the teamsters, have refused to cross the picket lines.

It seems undisputed that if the picketing continues, the store must close and the 4,000 other employees must be laid off. Obviously, such occurrence would result in substantial and irreparable injury to the charging party. Issuance of a *temporary* injunction until the Board may act, will, on the other hand, work little, if any, hardship upon respondent.

The claim of "unfair labor practice" presently before the N.L.R.B. pursuant to a charge filed by Bloomingdales and accepted by the petitioner in his capacity as Regional Director, is pending a hearing before a board examiner, and petitioner avers that there is a substantial likelihood that upon the report of such examiner a determination will be made by the Board that the respondent is engaging and has engaged in unfair labor practices within the meaning of Section 8(b) (7) (C) of the Act. This charge is based upon the assertion that the bargaining unit which respondent seeks to represent consists of 10 uniform guards, 21 plainclothes detectives, 12 watchmen and 39 fitting room checkers. Fitting room checkers have previously been held by N.L.R.B. to be "guards" within the provisions of Section 9(b) (3) of the Act. Lord & Taylor, 150 N.L.R.B. 812, 817 (1965). By letter dated October 4, 1971 addressed to the President of Blooming-

dales, asserting majority representation of these employees, respondent, in effect, concedes that the individuals are "security guards at your stores." If all of said individuals are not guards, then we are confronted with the situation of a mixed unit of guards and non-guards, also within the statute.

The statute provides as follows:

(b) The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: *Provided,* That the Board shall not * * * (3) decide that any unit is appropriate for such purposes if it includes, together with other employees, any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises; but no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than guards. 29 U.S.C.A. § 159(b) (3).

The purpose of the picketing is to obtain recognition. This is admitted by the exchange of correspondence and evidenced by the content of the signs being carried by the pickets and the use of the words "On Strike" together with the name and designation of the Union.

Counsel for respondent has conceded by letter dated October 18, 1971, copies of which are attached to the answer and also to the affidavit of Robert Silver, that the unit in which the Union seeks representation consists of "guards" within the meaning of the National Labor Relations Act, and that respondent is affiliated with the teamsters, a labor organization which admits to membership employees other than guards.

The Court makes no findings with respect to the status of these employees, but merely suggests the foregoing to indicate that there appears to be a likelihood that the Board will accept jurisdiction of the alleged unfair labor practice and issue a complaint thereon. There is no dispute that Bloomingdales is engaged in interstate commerce.

■ Section 8(b) (7) represents an amendment to the National Labor Relations Act enacted in 1959 by Congress for the express purpose of placing restrictions on recognitional picketing in order that the orderly resolution of disputes over representation of employees could be settled by procedures in the N.L. R.B., rather than as a result of coercive picketing with the consequent economic loss to employees, employers and the community at large.

Recognitional picketing by a non-certified union for more than a reasonable time without a representation petition being filed, has been enjoined at the instance of the Regional Director. N.L. R.B. v. Suffolk County District Council of Carpenters, 387 F.2d 170 (2d Cir. 1967).

Since the petition was filed with the Court, a petition for recognition has been filed by respondent and dismissed. Adequate administrative and judicial means exist to review the correctness of that determination, and those means should be used alternatively to recognitional picketing.

■ While the Board has apparently not yet determined whether or not Section 8(b) (7) (C) of the Act is an absolute bar to recognitional picketing by a union seeking to represent a unit of guards under circumstances where the unit cannot be certified as a representative under Section 9(b) (3) of the Act because it admits to membership persons other than guards, it would appear that the Congressional intent and a plain read-

ing of Sections 8(b) (7) and 9(b) (3) would indicate that such will likely be the determination of the Board. If this be considered a novel question, then the Court should grant the injunction prayed for because the Regional Director has made a determination of reasonable cause which on all the facts appears justified. Only thus may the orderly processes of the Board in determining its own jurisdiction and discharging the function granted to it by Congress be served. Such injunctions have been granted by this Court in unreported cases, McLeod v. Local 456 Teamsters (61 Civ. 260, McGohey, J.) and McLeod v. Building Service Employees (63 Civ. 3333, McLean, J.).

The Court is aware of the indication, by *dicta* in Rock-Hill-Uris, Inc. v. McLeod, 236 F.Supp. 395, aff'd 344 F.2d 697 (2d Cir.) to the effect that coercive recognitional picketing could be employed under certain conditions, by a union which could not be certified. This is the issue which the Board in the instant case, has before it for decision. A refusal to issue the provisional relief requested herein would grant to a disqualified union greater freedom of action to picket than Congress has permitted to those unions clearly qualified to have a certification election. N.L.R.B. v. Local 542, International Union of Operating Engineers, 3 Cir., 331 F.2d 99, 106, 107.

Based upon the foregoing findings, an injunction will issue forthwith as requested by the petition of the Regional Director. Settle Order on two days notice.

Respondent, at the very least, is entitled to an opportunity for a prompt appearance before an Examiner of the Board, and that the matter be expedited so that a final determination can be made by the Board. Accordingly, the Order shall provide that if the charges are not expeditiously processed before the Examiner with reasonable speed, having regard to the existence of the injunction, then respondent, if so advised, may move on notice for an Order vacating, modifying or terminating the injunctive provisions.