Robert S. FUCHS, Regional Director of the First Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD

v.

TEAMSTERS LOCAL UNION NO. 671, a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,

Civ. No. H 75–153.

United States District Court,
D. Connecticut.

May 29, 1975.

Thomas P. Kennedy, N. L. R. B., Region 1, Boston, Mass., for plaintiff.

Norman Zolot, Hamden, Conn., for defendant Union.

Harry M. Sangerman, Chicago, Ill. (McDermott, Will & Emery), Chicago, Ill., for charging party, Purolator.

## RULING ON PETITION FOR PRELIMINARY INJUNCTION

CLARIE, Chief Judge.

The petitioner seeks a preliminary injunction, under § 10(*l*) of the National Labor Relations Act, 29 U.S.C. § 160(*l*),[1] to halt the picketing currently being conducted by the respondent at the Hartford, Connecticut, locations of Purolator Security, Inc. A hearing was held on May 12, 1975; and the parties have submitted briefs as well as proposed findings of fact and conclusions of law. After considering all the evidence, the arguments of counsel and all papers that have been filed, the Court finds that the petitioner's request for a preliminary injunction should be granted.

### Facts

Petitioner is a Regional Director of the First Region of the Board, an agency of the United States, and files this petition for and on behalf of the Board. Respondent, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work. Respondent maintains its principal office in East Hartford, Connecticut, and at all times material herein has been engaged within this judicial district in transacting business and promoting and protecting the interests of the employee members of respondent.

Purolator, a Texas corporation having its principal offices in Dallas, Texas, operates a facility at Hartford, Connecticut, from which it is primarily engaged in providing armored carrier service for private customers and for the state and federal governments, within the State of Connecticut.[2] In addition, Purolator provides interstate service between points within Connecticut and Boston and New York City. The Company's armored cars are operated by teams of two men, one of whom is primarily responsible for entering the premises of the customers to make pickups and deliveries, called a messenger-guard, while the other remains in the vehicle and is responsible for protecting both his partner and the contents of the truck and is described as a driver-guard. The positions of driver-guard and messenger-guard are somewhat interchangeable and the employee's rate of pay at a given time depends on which function he is performing. The driver-guards and messenger-guards wear uniforms, carry sidearms and are required to conform to certain driver standards and regulations prescribed by the Interstate Commerce Commission and the Connecticut Public Utilities Commission relating to the op-

1. 29 U.S.C. § 160(*l*) provides:

"Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 158(b)(7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have oc-

curred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law . . . . ."

2. Although Purolator also operates a "stationary guard" service, which provides guards who remain on the premises of the customer, these stationary guards are not included in the bargaining unit which the respondent seeks to represent.

eration of common carriers. Their duties include picking up and delivering items of value, including currency, negotiable stocks and bonds, and precious metals on designated routes. All of the items carried are owned by the customers being serviced, thus establishing the Company's role in effect, as that of a bailee for hire. Typical customers include banks, super-markets, large manufacturing concerns, as well as the state and federal governments.

In addition to its armored carrier service, Purolator operates a mail delivery service which employs approximately twenty part-time "mail-messengers" who drive conventional, i. e. non-armored, vehicles. Purolator also employs one plant custodian at its Hartford office and approximately twelve maintenance employees who service the Company's vehicles.

The respondent Local Union commenced picketing at Purolator's Hartford site on May 5, 1975, at 12:10 a. m. and has picketed continuously to the present date. On April 28, in a telephone conversation with Robert Murphy, Purolator's Senior Vice-President for Industrial Relations, the Secretary-Treasurer of Local 671, Richard Robidoux, notified him that Local 671 represented a majority of Purolator's Hartford employees, and requested that Purolator voluntarily recognize the respondent as their collective bargaining agent. Mr. Murphy refused, citing a "good faith doubt" as to the Local's claimed majority status. On April 30, Purolator filed a charge with the National Labor Relations Board alleging that Local 671 had violated § 8(b)(7)(C) of the Act, 29 U.S.C. § 158(b)(7)(C).[3] The respondent

Local on May 6, filed with the Board a petition for an election in a bargaining unit consisting of "drivers, mechanics and maintenance" employees.[4] The Board's petition for a § 10(*l*) injunction was filed in this Court on May 7, an order to show cause was filed the same day, and a hearing on the Board's petition was held on May 12, 1975, at which the respondent Union appeared.

### Law

Section 10(*l*) of the Act, 29 U.S.C. § 160(*l*) provides in relevant part that the Board shall conduct a prompt preliminary investigation of any unfair labor practice charge alleging a violation of, *inter alia*, § 8(b)(7) and that:

> "If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law . . . . ."

It is essential at the outset to note the bounds which have been set, by the statute and the judicial construction thereof, on this Court's function in a § 10(*l*)

---

3. The charge recites the following grounds: "On or about April 28, 1975, and continuing to date the above named labor organization through its officers and agents threatened to picket Purolator Security, Inc., the charging party herein, and other persons engaged in commerce, where the object thereof was forcing or requiring the charging party to recognize or bargain with the above named labor organization as a representative of its employees or forcing or requiring the em-

ployees of the charging party to accept the above named labor organization as their collective bargaining representative where such threats have continued without a petition under Section 9(c) being filed." On May 7, Purolator filed an amended charge adding the allegation that picketing had actually commenced on May 5.

4. Petitioner's Exhibit 1.

proceeding. First, in terms of the issues to be considered, this function is a two-fold one:

"In § 10(*l*) proceedings the function of the federal district court consists of determining (1) whether the temporary injunctive relief would be 'just and proper' in terms of general equitable principles and (2) whether there is 'reasonable cause' for the Regional Director 'to believe such [unfair labor practice] charge is true and that a complaint should issue,' . . . ." *McLeod v. Local 25, International Brotherhood of Electrical Workers,* 344 F.2d 634, 638 (2d Cir. 1965).

The Court starts with the proposition that "[t]he Supreme Court has not yet passed upon the criteria for granting a preliminary injunction under either Section 10(j) or 10(*l*)." *Danielson v. Local 275, Laborers International Union of North America,* 479 F.2d 1033, 1035 (2d Cir. 1973). Thus, in formulating the limits on the permissible scope of its inquiry, the Court must take its lead from the relevant decisions of the Second Circuit Court of Appeals, and particularly its recent efforts to harmonize those decisions in *Danielson v. Joint Board of Coat, Suit & Allied Garment Workers Union,* 494 F.2d 1230 (2d Cir. 1974).

In *Danielson v. Joint Board, supra,* the Court reaffirmed the principle that a district court in a § 10(*l*) proceeding is not to grant its automatic, rubber stamp approval to the Board's request. Going one step further, the Court rejected the approach of several other Circuits, under which district courts are directed "to issue an injunction whenever the Regional Director has advanced a claim sufficiently 'thoughtful' to escape

being branded as 'insubstantial *and* frivolous.' (emphasis supplied)" *Id.* 494 F.2d at 1244, quoting *Samoff v. Building & Construction Trades Council of Philadelphia & Vicinity,* 475 F.2d 203, 207 (3d Cir. 1973). On the other hand, it is also made clear, that this Court is precluded from basing its decision, at this interlocutory stage, on its own final assessment of the merits. *Kaynard v. Independent Routemen's Association,* 479 F.2d 1070, 1071 (2d Cir. 1973). The *Danielson v. Joint Board* Court, expressed the standard to be applied in the following terms:

"We hold only that when, after full study the district court is convinced that the General Counsel's legal position is wrong . . . it should not issue an injunction under § 10(*l*)." 494 F.2d at 1245.

Keeping in mind the limited purpose of a § 10(*l*) proceeding, the Court is not "convinced that the [Board's] legal position is wrong." Accordingly, since the Regional Director did have reasonable cause to believe the unfair labor practice charge filed by Purolator was true, and further, since injunctive relief is "just and proper" under the circumstances presented here, the preliminary injunction sought by the Regional Director shall enter.

### Reasonable Cause.

█ The unfair labor practice charges filed by Purolator allege a violation of § 8(b)(7)(C) of the Act, 29 U. S.C. § 158(b)(7)(C).[5] In order for the Regional Director to find reasonable cause to believe such charges are true, he must first have reasonable cause to

---

5. 29 U.S.C. § 158(b)(7)(C) provides:
"(b) It shall be an unfair labor practice for a labor organization or its agents—
. . . . . .
(7) to picket or cause to be picketed, or threaten to picket or caused to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employ-

er to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:
. . . . . .
(C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days

believe the following two elements exist: (1) that the driver-guards and messenger-guards employed by Purolator are "guards" for purposes of § 9(b)(3) of the Act, 29 U.S.C. § 159(b)(3);[6] and (2) that the picketing of Purolator's Hartford site, which picketing is concededly designed for the objective of Union recognition or organization, has been conducted for more than the "reasonable period of time" allowed by § 8(b)(7)(C).

Section 9(b) of the Act confers on the Board the general power to determine the "unit appropriate for the purposes of collective bargaining." The proviso in § 9(b)(3) is in two parts. First, it provides that the Board shall not find appropriate, a unit which "includes, together with other employees, any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises." If the driver-guards and messenger-guards are in fact determined to be "guards" as defined for purposes of this proviso, then it would follow that the Board could not find that the unit for which Local 671 seeks recognition is a proper one. However, it is the second part of this proviso, on which the Regional Director primarily bases his finding of "reasonable cause" in these proceedings; and it reads:

"but no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization admits to membership or is affiliated directly or indirectly with an organization which admits to membership employees other than guards."

Since Local 671 does admit to membership "employees other than guards," this part of the proviso would clearly prevent the Board from certifying local 671 as the bargaining representative, if the Company's armored car driver-guards and messenger-guards are found to be "guards" within the meaning of this proviso.

In arguing that the driver-guards and messenger-guards are in fact "guards" the Regional Director relies principally on two decisions of the National Labor Relations Board. In the first, *Armored Motor Service Company, Inc.*, 106 N.L.R.B. 1139 (1953), the Board reversed its own prior ruling, in *Brinks, Inc.*, 77 N.L.R.B. 1182 (1948), which had held in effect that § 9(b)(3) was directed only at "plant guards," or as applied to the Purolator employees, the "stationary guards." In the *Armored Motor Service Company* case, the Board decided that the § 9(b)(3) prohibition was not limited in this fashion; that the Congressional purpose to eliminate the "danger of divided loyalty" extended to armored car guards as well; and the fact that the property these armored car guards protected did actually belong to the customers of their employer did not exclude these guards from coverage under §

from the commencement of such picketing: *Provided*, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c)(1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof . . . ."

**6.** 29 U.S.C. § 159(b)(3) provides:

"(b) The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining

shall be the employer unit, craft unit, plant unit, or subdivision thereof: *Provided*, That the Board shall not . . . (3) decide that any unit is appropriate for such purposes if it includes, together with other employees, any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises; but no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than guards."

9(b)(3). This interpretation of that section has recently been reaffirmed by the Board in issuing a cease and desist order based on a finding of a § 8(b)(7)(C) violation in circumstances which appear to be factually indistinguishable from those presently before this Court. *Dunbar Armored Express, Inc.,* 211 N.L.R.B. No. 78 (1974).

These two decisions leave little room to doubt that the Regional Director has "reasonable cause" to believe that the Board would rule that these driver-guards and messenger-guards are "guards" for purposes of § 9(b)(3). However, the respondent Local asks the Court to go beyond this determination. It would have this Court review the Board's "underlying legal theories" (Respondent's Memorandum p. 3–4) and make a finding that there is no "reasonable cause to believe that a Board decision finding an unfair labor practice will be enforced by a Court of Appeals." *McLeod v. Business Machine & Office Appliance Mechanics Conference Board,* 300 F.2d 237, 242, at n. 17, quoted in *Danielson v. Joint Board, supra,* 494 F.2d at 1243. Such an inquiry, however, based as it is on delving into the legislative history of the § 9(b)(3) proviso and substituting this Court's judgment for that of the Board, would necessarily lead to the type of determination on the substantive merits which has been foreclosed by *Danielson v. Joint Board,* and *Kaynard v. Independent Routemen's Association, supra.*

This conclusion is strengthened by the fact that the Board's interpretation of § 9(b)(3) in *Armored Motor Service Co., supra,* has stood since 1953, despite the availability, through both judicial and legislative avenues, of an opportunity to obtain an overruling of that interpretation. *Cf. Humphrey v. Drivers, Chauffeurs & Helpers Local 639,* 369 F.Supp. 730, 735 (D.Md.1974). In this respect, the situation before this Court is in sharp contrast to that before the Court of Appeals in *Danielson v. Joint Board, supra.* The latter case concerned an interpretation of the Act which the Court characterized as "a new adventure of the General Counsel in the interpretation of a statute fourteen years after it had come on the books." 494 F.2d at 1245. Here, the Regional Director's finding of reasonable cause is supported by a consistently-held Board interpretation of the law. Whatever the ultimate resolution of the issue, it is sufficient at this stage to find that the Board's interpretation meets a standard of rationality, which is much stricter than the merely "not insubstantial and frivolous" test rejected in *Danielson v. Joint Board, supra.* Any definitive ruling on the merits of the Board's interpretation would be improper at this stage; and must await the orderly processing of the employer's unfair labor practice charge and subsequent review by the Court of Appeals, as provided under §§ 10(e) or 10(f) of the Act.

The respondent's second main contention under the "reasonable cause" issue is that even if the Board's interpretation of "guards" is a correct one, the picketing directed against Purolator has not yet extended beyond the "reasonable period of time" permitted by § 8(b)(7)(C). The reason for, and the operation of, § 8(b)(7)(C)'s limitations on organizational picketing need not be repeated in detail here.[7] Any contention that this proviso confers an absolute right to picket for thirty days without the filing of a petiton for an election was rejected in this Circuit shortly after it went into effect:

"The statute plainly contemplates thirty days as the outer limit, with the power in the Board, subject to review by the courts, to fix shorter periods as 'reasonable' ones according to particular fact situations." *NLRB v. Local 239, International Brotherhood of Teamsters,* 289 F.2d 41, 45 (2d

---

7. *See, e. g., Hod Carriers' Local Union 480 C.A. Blinne Construction Co.,* 135 N.L.R.B. 121 (1962).

Cir.), *cert. denied*, 368 U.S. 833, 82 S. Ct. 58, 7 L.Ed.2d 35 (1961).

The case presently before this Court, of course, does not present the usual fact situation. The respondent's petition for an election under § 9(c), which would ordinarily remove the time limitation placed on organization picketing, in this case has no likelihood of success, given on the Board's interpretation of the statutory term "guards," in the *Armored Motor Service* and *Dunbar Armored Express* cases, *supra.*[8] Given these circumstances, this Court cannot say that the Regional Director's interpretation of "reasonable period" in § 8(b)(7)(C) lacks the rational basis necessary to support a preliminary injunction under § 10(*l*).

The respondent argues further than even if § 9(b)(3) applies to Purolator's driver-guards and messenger-guards, that section only prevents the Board from certifying the respondent as their bargaining agent, and that picketing for the purposes of voluntary recognition is still permitted for a reasonable period. Any support for this argument which might be gleaned from *Rock-Hill-Uris, Inc. v. McLeod*, 236 F.Supp. 395, 398 (S.D.N.Y.1964), was rejected in *McLeod v. Security Guards & Watchmen Local Union No. 802*, 333 F.Supp. 768 (S.D.N.Y.1971), and this Court adopts the reasoning of Judge Brieant on this point:

"If this be considered a novel question, then the Court should grant the injunction prayed for because the Regional Director has made a determination of reasonable cause which on all the facts appears justified. Only thus may the orderly processes of the Board in determining its own jurisdiction and discharging the function

granted to it by Congress be served." 333 F.Supp. at 771.

### *"Just and Proper" Issue*

Having determined the "reasonable cause" issue in favor of the petitioner Regional Director, the Court must also determine whether a preliminary injunction is "just and proper" under the terms of § 10(*l*). In doing so, the Court has been instructed to apply "general equitable criteria," *Danielson v. Joint Board, supra*, 494 F.2d at 1242. To the extent that these criteria include the traditional one of likelihood of success on the merits, that point has already been treated in the discussion of the "reasonable cause" issue, *supra.* The Second Circuit has not yet ruled on the question of whether irreparable harm is a necessary element in every § 10(*l*) proceeding. See, *Danielson v. Local 275, Laborers International Union of North America, supra*, 459 F.2d at 1035. For purposes of these proceedings, this Court finds, on the basis of the testimony concerning the nature of the employees' operations and the affidavit of Vicenzo M. Fontana, Vice-President in charge of General Services for the Connecticut Bank and Trust Company, that the economic impact of the picketing on both the employers and the community at large, is severe enough to warrant the preliminary injunction sought by the petitioner. Said affidavit was filed in the related case of *Fuchs v. Teamsters Local Union No. 671*, Civil No. H 75–161, in which Wells Fargo is the charging party. It indicates that the respondent's picketing has seriously curtailed the bank's ability to secure the transport of, among other items, currency, state lottery tickets and federal food stamps. The Court will take judicial notice of the fact that the picketing of Purolator

8. It is of no material consequence for purposes of this ruling whether dismissal of the petition by the Board on the basis of its interpretation of § 9(b)(3) would be premised on a finding that the unit which the respondent seeks to represent is a mixed one of guards and non-guards or on a finding that the respondent, because it admits non-guards to membership, could not be certified as the bargaining representative for this unit although the respondent urges that it be permitted to continue picketing for the limited purpose of organizing Purolator's mail-messengers, mechanics and maintenance employees only, its representation petition is not so restricted, and thus the question of picketing for such limited purposes is not before the Court.

has had a similar effect on customers serviced by that Company.

A final factor entering into the Court's determination that a preliminary injunction is "just and proper" is the consideration that the purposes of the National Labor Relations Act will best be served by a cessation of the picketing pending a definitive resolution of the issues raised by the respondent Local 671. See, *Humphrey v. Drivers, Chauffeurs & Helpers Local 639, supra*, 369 F.Supp. at 738–739. The Board's position on these issues is consistent with its longstanding policy. Only by prompt Board action in the pending § 8(b)(7)(C) charges, and full review by the Court of Appeals, can a resolution satisfactory to all parties be reached. It is not for this Court to reverse the Board's policy in the interim, and further picketing by the respondent in the face of opposition by both the employers and the Board, which opposition is not without a rational basis, would serve no constructive purpose and would be likely to cause irreparable harm.

The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the Court pursuant to Rule 52(a), Fed.R.Civ.P.

So ordered.