George SQUILLACOTE, Regional Director of the Thirtieth Region of the National Labor Relations Board, for and on Behalf of the National Labor Relations Board, Petitioner-Appellee,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 344, Respondent-Appellant.

No. 76–2117.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1977.

Decided June 29, 1977.

As Corrected Oct. 19, 1977.

Elliott Moore, Deputy Associate Gen. Counsel, John W. Hornbeck, Margery E. Lieber, Attys., N. L. R. B., Washington, D. C., for petitioner.

Kenneth R. Loebel, Milwaukee, Wis., Harry Sangerman, Chicago, Ill., for respondent.

Before TONE and BAUER, Circuit Judges, and JAMESON, Senior District Judge.*

TONE, Circuit Judge.

The issues in this appeal are whether an injunction under § 10(*l*) of the National Labor Relations Act was justified, and whether, despite § 10(e) and (f) of the Act, certain statutory and constitutional claims may be asserted by an action in the district court while the underlying Board proceeding is still in progress.

The International Brotherhood of Teamsters, Local 344 filed a petition for a representation election with the National Labor Relations Board. The Regional Director dismissed the petition on the grounds that under § 9(b)(3) of the National Labor Relations Act, 29 U.S.C. § 159(b)(3), the employees of Purolator Security, Inc., whom the Union was seeking to represent, appeared to be "guards" and the Union was a labor organization which, in the words of the statute, "admits to membership," and was "affiliated . . . with an organization which admits to membership, employees other than guards." The Board affirmed the dismissal.

Subsequently the Board issued an amended unfair labor practice complaint alleging, *inter alia*, that the Union had engaged in recognitional picketing of Purolator in violation of § 8(b)(7)(C), 29 U.S.C. § 158(b)(7)(C). Shortly thereafter, the Regional Director, pursuant to § 10(*l*), 29 U.S.C. § 160(*l*), petitioned the District Court to enjoin the challenged picketing pending final Board action on the charges contained in the unfair labor practice complaint.[1] The Union answered and counterclaimed, alleging (1) that § 8(b)(7)(C) was unconstitutional as applied to the Union in this case,[2] (2) that § 9(b)(3) was unconstitutional on its face, and (3) that the Board exceeded its statutory authority in dismissing the Union's petition for a representation election. The District Court granted injunctive relief and dismissed the Union's counterclaim. The Union appeals.

## I.

### *The Appropriateness of Relief Under § 10(l)*

The district court's inquiry in a § 10(*l*) proceeding must be narrowly confined:

> "[T]he district court is not called upon to decide the merits of an [8(b)(7)(C)] charge. The Board does this. The district court guided by equitable principles determines instead whether the Board has reasonable cause to believe the defendant has violated section [8(b)(7)(C)] of the Act. If the court finds reasonable cause, it must grant whatever injunctive relief 'it deems just and proper.' "

*Squillacote v. Graphic Arts Int'l Union,* 513 F.2d 1017, 1021 (7th Cir. 1975) [*Graphic Arts I*]. See also *Squillacote v. Graphic Arts Int'l Union,* 540 F.2d 853, 858 (7th Cir. 1976) [*Graphic Arts II*]. These limitations apply not only to review of the facts allegedly supporting the unfair labor practice charge but also to scrutiny of the legal theory on which the Board bases the charge. For, "it is axiomatic that the Board should be accorded the opportunity to pass initially on questions involving the construction of the N.L.R.A. Where the legal questions revolve around the substantive validity of unfair labor practice theories, it is particularly important that the courts make every effort to have the Board pass on the legal merits first." *Boire v. Int'l Brotherhood of*

---

* The Honorable William J. Jameson, Senior District Judge of the United States District Court for the District of Montana, is sitting by designation.

1. The administrative law judge issued his decision and recommended order in the underlying unfair labor practice proceedings on December 28, 1976. The ALJ found the Union's recognitional picketing of Purolator to be violative of § 8(b)(7)(C). The Union has filed exceptions to the ALJ's decision with the Board.

2. In its reply brief to this court, the Union concedes that its challenge to the constitutionality as applied of § 8(b)(7)(C) is not properly cognizable as a counterclaim in a § 10(*l*) proceeding.

*Teamsters,* 479 F.2d 778, 789 (5th Cir. 1973). See also *Schauffler v. Local 1291, Int'l Longshoremen's Association,* 292 F.2d 182, 188 (3d Cir. 1961). Thus the district court need only satisfy itself that the legal theory underlying the unfair labor practice charge is "substantial and not frivolous." See *Graphic Arts II, supra,* 540 F.2d at 858.

■ The pertinent facts in the case at bar being undisputed, the only issue remaining on the § 10(*l*) aspect of the case is the substantiality of the Regional Director's legal theory. This theory is that the words of § 8(b)(7)(C), a "petition under section 9(c)," [3] refer to a petition raising a "legitimate" question of representation and such a question is not presented when, if an election were conducted by the Board, the petitioning union would be prohibited by the Act from being certified as the collective bargaining representative of the employees whom the union is seeking to represent. Inasmuch as § 9(b)(3) provides that "no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than

guards," the Board is precluded from certifying the Union as the bargaining representative of the Purolator guards. The Regional Director and the General Counsel therefore contend that, under § 8(b)(7)(C), the Union's representation petition did not operate to insulate the Union from unfair labor practice charges based on its recognitional picketing of Purolator.

This legal theory is plainly "substantial and not frivolous." It has been the basis for Board orders in at least two other reported cases in which the facts were similar to those at bar. *Dunbar Armored Express, Inc.,* 211 NLRB 687 (1974); *Wells Fargo Armored Service Corp.,* 221 NLRB 1240 (1975). The Board's *Wells Fargo* order was enforced by the District of Columbia Circuit in *Drivers, Chauffeurs, Warehousemen and Helpers, Local 71 v. NLRB,* 553 F.2d 1368 (D.C.Cir. 1977).[4] In addition, several district courts have granted § 10(*l*) relief under circumstances similar to those in this case. *Humphrey v. Drivers, Chauffeurs & Helpers, Local 639,* 369 F.Supp. 730 (D.Md. 1974); *Fuchs v. Teamsters Local 671,* 398 F.Supp. 243 (D.Conn.1975); *McLeod v. Security Guards and Watchmen Local 803,* 333 F.Supp. 768 (S.D.N.Y.1971).[5]

---

3. "(c)(1) Whenever a petition shall have been filed . . .

    (A) by . . . any individual or labor organization . . . alleging that a substantial number of employees (i) wish to be represented for collective bargaining and that their employer declines to recognize their representative as the representative defined in subsection (a) of this section . . . ..

        \*   \*   \*   \*   \*   \*

the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. . . . If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof."

4. In enforcing the Board's *Wells Fargo* order on the merits, the District of Columbia Circuit upheld the Board's conclusion that recognitional picketing under circumstances virtually identical to those found in this case violated § 8(b)(7)(C). In reaching this result, however, the court apparently did not accept that portion of the Board's theory which might suggest that a representation petition by a Union which is

barred from certification by the Act could not be a "petition under section 9(c)" which would insulate the Union's recognitional picketing from the Act's proscriptions. Rather, the court held that, once the Board in its discretion dismissed a representation petition from a noncertifiable union, subsequent recognitional picketing by the non-certifiable union may be found violative of § 8(b)(7)(C) of the Act. Under either the Board's or the court's legal theory of the Union's conduct in this case would violate § 8(b)(7)(C), because the recognitional picketing occurred after the Union's representation petition had been dismissed.

5. Hence, this is a stronger case for upholding a district court's grant of § 10(*l*) relief than those cases where a legal theory which had never been approved by the Board was advanced by the Board's representatives and relief was nevertheless granted. For example, in *McLeod v. Security Guards and Watchmen Local 803,* 333 F.Supp. 768, 771 (S.D.N.Y.1971), the court stated:

    "If this be considered a novel question, then the Court should grant the injunction prayed for because the Regional Director has made a

▪ The District Court did not err, therefore, in finding the requisite reasonable cause to believe that the union committed the unfair labor practices charged in the Board proceeding. Having so found, and consequently being required to "grant whatever injunctive relief 'it deems just and proper.'" *Graphic Arts I, supra,* 513 F.2d at 1021, the court enjoined the union from the following conduct:

"(a) Continuing their current picketing of Purolator Security, Inc.

"(b) Otherwise picketing or causing Purolator Security, Inc. to be picketed, or threatening to picket or to cause Purolator Security, Inc. to be picketed, where an object thereof is to force or require Purolator Security, Inc. to recognize or bargain with respondent International Brotherhood of Teamsters, Local 344, as the representative of Purolator Security, Inc.'s guards, or to force or require Purolator Security, Inc.'s guards to accept or select respondent International Brotherhood of Teamsters, Local 344, as their collective-bargaining representative."

▪ This relief did not exceed that which is necessary to effectuate the purpose of § 10(*l*), *viz.,* to prevent persons whom the Board's representatives have reasonable cause to believe are violating the Act from accomplishing their unlawful objectives before the Board's orderly, though frequently protracted, processes have run their course. "No alternative kind of relief would have given adequate recognition to the reasona-

ble-cause-to-believe standard of section 10(*l*)," *Graphic Arts II, supra,* 540 F.2d at 859, or to Congress' special concern for the potential harmful effects of recognitional picketing.[6] As the court noted in *Retail Clerks Union v. Food Employers Council, Inc.,* 351 F.2d 525, 531 (9th Cir. 1965) (emphasis in original):

"Section 10(*l*) reflects a Congressional determination that the unfair labor practices enumerated therein [including recognitional picketing in violation of § 8(b)(7)(C)] are so disruptive of labor-management relations and threaten such danger of harm to the public that they should be enjoined *whenever a district court has been shown* reasonable cause to believe in their existence and finds that the threatened harm or disruption can best be avoided through an injunction."

Accordingly, the District Court's order issuing the § 10(*l*) injunction cannot be disturbed unless the Union can prevail on its counterclaim, to which we now turn.

## II.

### *The Union's Counterclaim*

The Union also contends that the District Court erred in dismissing two of three counts of the Union's counterclaim [7] as not properly cognizable in an action for § 10(*l*) relief. As this court recently stated in *Grutka v. Barbour,* 549 F.2d 5 (7th Cir.), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977):

determination of reasonable cause which on all the facts appears justified. Only thus may the orderly processes of the Board in determining its own jurisdiction and discharging the function granted to it by Congress be served."
See also *Int'l Brotherhood of Teamsters, supra; Graphic Arts II, supra.*

6. In its counterclaim in the court below, the Union alleged that § 8(b)(7)(C), as applied to the Union in this case, is unconstitutional. However, in its reply brief to this court the Union conceded that this claim "should be permitted to be passed upon in the first instance by the Board and then be subject to Appellate review." Despite this apparent concession, the Union argues that the District Court should have considered the merits of this constitutional claim in the course of determining whether

the grant of § 10(*l*) relief was "just and proper." We cannot agree.

First, there is no indication that this theory was advanced by the Union during the course of the § 10(*l*) proceedings in the District Court. Second, to presume that Congress intended the "just and proper" language in § 10(*l*) as a broad grant of authority to the district courts to consider on the merits challenges to the Board's interpretation and application of the Act at a preliminary stage in unfair labor practice proceedings would seem fundamentally inconsistent with the acknowledged purpose of § 10(*l*). That section was designed to preserve, not negate, the Board's jurisdiction pending final adjudication of unfair labor practice charges.

7. See notes 2 and 6, *supra.*

"It is well settled that district courts generally do not have jurisdiction to enjoin the Labor Board from conducting representation or unfair labor practice proceedings. Under Section 10 of the National Labor Relations Act . . . the exclusive means of obtaining judicial review of Board rulings by an aggrieved party is in a court of appeals. Normally, the administrative remedies extant before the Labor Board must be exhausted as a prerequisite to federal jurisdiction." *Id.* at 7 (citations omitted). See § 10(e) and (f) of the Act, 29 U.S.C. § 160(e) and (f). The Supreme Court has recognized only two exceptions to the § 10 exhaustion requirement. One is the exception established in *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), for a plain violation of statutory right. The other, set forth in *McCulloch v. Sociedad Nacional,* 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), is limited to cases raising questions of national interest with international implications. See also *McCulloch v. Libbey-Owens-Ford Glass Co.,* 131 U.S.App.D.C. 190, 403 F.2d 916 (1968), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969).

### A. *Alleged Violations of a Statutory Mandate by the Board*

The Union's first contention is that the Board violated a statutory mandate and therefore the *Leedom v. Kyne* exception applies. It is said that § 9(b)(3)'s [8] conceded bar to the Union's certification was not a ground for refusing to hold an election, because the existence of a "question of representation" for purposes of § 9(c) [9] is not dependent upon the petitioning union's certifiability. The conditions set forth in § 9(c) having been otherwise satisfied, the Union argues, the Board's dismissal of the representation petition violated the statutory mandate that an election be held and the mathematical results certified, and therefore district court review of the Board's action on its representation petition was appropriate.

■ *Leedom v. Kyne* involved the Act's express provision in § 9(b)(1) that professional employees have a right to vote separately on the question of their inclusion in a bargaining unit comprised of both professional and nonprofessional employees. The Board included professional employees in a unit without taking the required vote. The unit determination was not subject to judicial review in the court of appeals. The Court held that the district court had jurisdiction to review Board action "made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.* 358 U.S. at 188, 79 S.Ct. at 184. See also *Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch,* 116 U.S.App.D.C. 243, 322 F.2d 993 (1963). The *Kyne* exception to the exhaustion requirement is a narrow one, however. See *Boire v. Greyhound Corp.,* 376 U.S. 473, 481, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); *Brotherhood of Railway & Steamship Clerks v. Association for the Benefit of Non-Contract Employees,* 380 U.S. 650, 660, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965); *McCulloch v. Sociedad Nacional, supra,* 372 U.S. at 16–17, 83 S.Ct. 671. A district court's jurisdiction "must rest on more than a mere allegation of unauthorized Board action," *Machinery, Scrap Iron, etc. Employees Local 714 v. Madden,* 343 F.2d 497, 499 (7th Cir.), *cert. denied,* 382 U.S. 822, 86 S.Ct. 53, 15 L.Ed.2d 69 (1965); the Board must have disregarded a specific and unambiguous statutory directive.

■ This standard is not satisfied here. The Union acknowledges, as it must, that unless there is a "question of representation" the Board cannot order an election pursuant to § 9(c). We have already recognized the reasonableness of the Board's position that no "question of representation" within the meaning of § 9(c) is raised by an election petition filed by a union which, as a consequence of § 9(b)(3), cannot be certified as the collective bargaining representative of the employees it seeks to represent. As we have noted, the Board's dismissal of a

---

**8.** Section 9(b)(3) is quoted in pertinent part in the text, *supra.*

**9.** See note 3, *supra.*

representation petition under circumstances like those at bar has been sustained by the District of Columbia Circuit. *Drivers, Chauffeurs, Warehousemen and Helpers, Local 71 v. NLRB, supra.* It is apparent in the case at bar that neither the dismissal of the Union's representation petition nor the bringing of the unfair labor practice charge can be characterized as a "patent disregard . . . of the bounds of its statutory jurisdiction." *Grutka, supra,* 549 F.2d at 8 (footnote omitted).

### B. Alleged Unconstitutionality of § 9(b)(3)

■ We now turn to a consideration of whether the claim of facial unconstitutionality of the statute falls within the narrow exception of *Leedom v. Kyne.* That claim is that § 9(b)(3)'s bar to certification of a union that also represents employees other than guards penalizes the rights of association of the Union and its members.

Although never endorsed by the Supreme Court,[10] the doctrine that a claim of denial of constitutional right can be asserted by an action in the district court notwithstanding § 10 of the Act has gained recognition and was acknowledged by this court in *Grutka, supra,* 549 F.2d at 8–10. The doctrine seems to have originated with Judge Learned Hand's opinion in *Fay v. Douds,* 172 F.2d 720 (2d Cir. 1949). There, a union contended that its status as exclusive bargaining agent for a company's employees was a "property" right and the Board's refusal to hold a hearing on the question of whether an election should be held upon another union's representation petition was a deprivation of property without due proc-

ess. The court held that "[i]f this assertion of constitutional right is not transparently frivolous, it gave the District Court jurisdiction." *Id.* at 723.

Later decisions, while accepting the principle that § 10 does not totally bar adjudication of a claim of denial of constitutional right in the district court,[11] have questioned the continuing viability of *Fay* insofar as it purports to create an exception to the exhaustion requirement for any constitutional claim which is "not transparently frivolous." See, *e. g., Grutka, supra,* 549 F.2d at 9 n. 7; *Boire v. Miami Herald Publishing Co.,* 343 F.2d 17, 21 n. 7 (5th Cir.), *cert. denied,* 382 U.S. 824, 86 S.Ct. 56, 15 L.Ed.2d 70 (1965); *Amalgamated Meat Cutters and Butcher Workmen of North America, Local 576 v. Allen,* 423 F.2d 267, 269 (8th Cir. 1970); *Utica Mutual Insurance Co. v. Vincent,* 375 F.2d 129, 134 (2d Cir.), *cert. denied,* 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967).[12] The Second Circuit has indicated that whatever is left of the doctrine it fashioned in *Fay* applies only to deprivation of "property" rights. *Utica Mutual, supra,* 375 F.2d at 134; *Herald Co. v. Vincent,* 392 F.2d 354, 359 (2d Cir. 1968). The Fourth Circuit, in holding that the district court lacked jurisdiction over a claim that Board action violated an employer's right of free speech, rejected *Fay* as unpersuasive. *Greensboro Hosiery Mills, Inc. v. Johnston,* 377 F.2d 28, 32 (4th Cir. 1967). The District of Columbia Circuit's most recent expressions on the subject treat claims of violation of statutory and constitutional right alike as being subject to the test of *Leedom v. Kyne, supra.* In *McCulloch v. Libbey-Ow-*

---

10. See text, *supra,* at the beginning of Part II.

11. As we have already observed, even this limited principle has never been specifically recognized by the Supreme Court. See text, *supra,* at the beginning of Part II. Nevertheless, we see no reason why constitutional claims should be treated less favorably than statutory claims, and the Court has recognized a narrow exception for the latter in *Leedom v. Kyne.* Moreover, if § 10 were construed as a total bar on the assertion of constitutional claims in the district court, questions concerning that sec-

tion's constitutionality might arise. See cases cited in note 18, *infra.*

12. *See also Bokat v. Tidewater Equipment Co.,* 363 F.2d 667, 672·73 (5th Cir. 1966):

"The fact that the attack is voiced in conclusory language of a denial of due process and like constitutional rights does not warrant stopping the Board in its tracks. As have others, we have recognized constitutional claims and have accordingly denied enforcement of the Board orders when the Board order comes up for enforcement."

ens-Ford Glass Co., supra, 403 F.2d at 917, the District of Columbia Circuit stated:

> "[T]he showing that the Board has violated the Act or deprived a plaintiff of constitutional rights must be strong and clear."

Accord, National Association of Women's and Children's Apparel Salesmen, Inc. v. NLRB, 151 U.S.App.D.C. 77, 465 F.2d 662, 663 (1972).[13]

This court has held that raising a constitutional issue concerning the Board's procedure, when judicial review is available in the courts of appeals, is insufficient to confer jurisdiction on the district court. Vapor Blast Mfg. Co. v. Madden, 280 F.2d 205, 208–209 (7th Cir.), cert. denied, 364 U.S. 910, 81 S.Ct. 273, 5 L.Ed.2d 225 (1960); Chicago Automobile Trade Association v. Madden, 328 F.2d 766 (7th Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964).[14] Fay was described in Vapor Blast, supra, 280 F.2d at 209 n. 8, as involving a claim of deprivation of property rights without a hearing and distinguished on the ground that "rights of judicial review were not directly available"; it was not mentioned in Chicago Automobile Trade Association. Our Grutka decision, involving a First Amendment attack on the Board's exercise of jurisdiction over lay teachers in Catholic schools, indicates that whatever is left of the Fay doctrine applies only to situations in which the party seeking to invoke the equity jurisdiction of the district court asserts "a vested property right with respect to a collective bargaining agreement where he has no way of ultimately obtaining judicial review." Grutka, supra, 549 F.2d at 9 n. 7.

In addition to its lack of decisional support, the doctrine that any constitutional claim which is "not transparently frivolous" may be adjudicated in the district court without exhausting the administrative remedy seems fundamentally inconsistent with repeated Supreme Court admonitions regarding the "narrow limits" and "painstakingly delineated procedural boundaries of Kyne." See, e. g., Boire v. Greyhound Corp., supra, 376 U.S. at 481, 84 S.Ct. 894; Brotherhood of Railway & Steamship Clerks v. Association for the Benefit of Non-Contract Employees, supra, 380 U.S. at 660, 85 S.Ct. 1192; McCulloch v. Sociedad Nacional, supra, 372 U.S. at 16–17, 83 S.Ct. 671. We recognize that when a constitutional violation is alleged, rather than a statutory violation as in Leedom v. Kyne, it may be argued, as it was in Grutka, that because an administrative agency is generally considered powerless to adjudicate the constitutionality of its governing statute,[15] a lesser showing should be required to invoke the jurisdiction of the district courts. This argument was rejected in Grutka on the ground that resolution of the issue raised in that case required development of a factual record, "a task peculiarly within the competence of the Board." Grutka, supra, 549 F.2d at 9. The Board's role as principal fact finder under the Act is not, however, the only important consideration in applying the exhaustion doctrine. Another is the desire of Congress, implicit in § 10, "to prevent litigious interruptions of the on-going administrative process," id. at 8, and therefore facilitate the efficient performance of the Board's delegated functions. Weinberger v. Salfi, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).[16] In view of the ease with which the "frivo-

---

**13.** See also Barnes v. Chatterton, 515 F.2d 916, 920 (3d Cir. 1975):

> "A party need not await a final agency decision if the preliminary agency decision clearly and unambiguously violates statutory or constitutional rights."

**14.** See also Television Wisconsin, Inc. v. NLRB, 410 F.Supp. 999, 1000 (W.D.Wis.1976).

**15.** See, e. g., Weinberger v. Salfi, 422 U.S. 749, 764, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975);

Oestereich v. Selective Service Board, 393 U.S. 233, 242, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) (Harlan, J., concurring); Public Utilities Comm'n v. United States, 355 U.S. 534, 539, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958).

**16.** As the court noted in American General Insurance Co. v. FTC, 496 F.2d 197, 200 (5th Cir. 1974): "[T]he efficiency of the agency is an important consideration, and courts ought not to encourage flouting of the administrative process."

lous" claim standard may be satisfied,[17] this important policy would be frustrated by adoption of the *Fay* doctrine. We conclude, as did the District of Columbia Circuit in *Libbey-Owens-Ford,* that the narrow exception created in *Leedom v. Kyne* applies only to a plain violation of right, even when the right is based on the Constitution rather than the statute.

In both *Vapor Blast, supra,* and *Chicago Automobile Trade Association, supra,* this court distinguished and explained *Leedom v. Kyne* as being grounded on the unavailability under § 10 of the Act of judicial review of the challenged Board action, with the result that denial of district court review would have resulted in loss of the right. Similarly, in *Grutka* this court said that "[t]he constitutional allegations . . . do not confer jurisdiction upon the district court because the statutory review procedures are fully adequate to protect the plaintiff's constitutional rights." *Grutka, supra,* 549 F.2d at 9. This has long been an important consideration in applying the exhaustion doctrine.[18] See *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 48, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *Aircraft & Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 773–774, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947); *Public Utility Commission v. United States,* 355 U.S. 534, 540, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); see also *FTC v. Miller,* 549 F.2d 452, 460–462 (7th Cir. 1977). When judicial review before a court of appeals under § 10 will afford an opportunity to present the constitutional issue for judicial determination, any reason that would otherwise support inferring a remedy in addition to the exclusive one provided by Congress is greatly weakened.[19]

Our *Grutka* decision is not inconsistent with our holding that this is not a case for a *Leedom v. Kyne* exception. The court in *Grutka* was not required to reach the question of whether even a claim of facial invalidity, to be exempt from the requirement of exhaustion of the administrative remedy, must be clearly correct and not reviewable under § 10 by the court of appeals. Its reasoning proceeded as far as was necessary to decide the case. Neither the "matter of fact/matter of law" distinction articulated in *Grutka* nor the passage from *Boire v. Greyhound Corp., supra,* quoted in that opinion was intended to make that distinction the sole criterion for determining the applicability of the rule of exhaustion. As the Fifth Circuit said in *Miami Herald Publishing Co., supra,* 343 F.2d at 21-·22 n. 9:

"We do not read the . . . decision in *Boire v. Greyhound Corp.* . . . as expanding the *Kyne* decision to permit the use of the equity powers of a district court to enjoin Board election proceedings whenever the issue is one turning 'solely upon construction of the statute.' . . . The Court emphasized the limited nature of the *Kyne* exception and merely utilized the distinction between fact and law as a ready means of explaining the difference between that case and *Kyne.*"

17. A claim is frivolous "either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this Court as to foreclose the subject." *California Water Service Co. v. City of Redding,* 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938).

18. This is particularly true when a claim of denial of constitutional right is asserted. Construing § 10 to preclude raising such a claim in any court would give rise to an additional constitutional problem. *Salfi, supra,* 422 U.S. at 762, 95 S.Ct. 2457; *Johnson v. Robison,* 415 U.S. 361, 366, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Lockerty v. Phillips,* 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943); *Grutka, supra,* 549 F.2d at 9 n. 7.

19. The Court's decision in *Salfi* does not dictate a contrary conclusion. There, the Court concluded that there had in fact been a final decision by the agency, and therefore a requirement that plaintiffs exhaust any additional formal procedures which might be available before the agency would have involved "a commitment of administrative resources unsupported by any administrative or judicial interest." *Salfi, supra,* 422 U.S. at 765-766, 95 S.Ct. at 2467. In the case at bar, on the other hand, there clearly has not been a final decision by the agency, see note 1, *supra,* and, as we have already observed, requiring exhaustion here serves a substantial agency interest in the efficient utilization of its resources in carrying out its responsibilities under the Act.

See also *Machinery Scrap Iron, etc. Employees, Local 714, supra,* 343 F.2d at 499. In addition, in rejecting the argument based on the theory that denial of district court review would cause chilling of First Amendment rights, the court in *Grutka* recognized the importance of the presence of an avenue for ultimate judicial review. *Grutka, supra,* 549 F.2d at 9 n. 7.

The Union's claim that § 9(b)(3) unconstitutionally penalizes the exercise of associational rights is neither an assertion of a clear violation of right nor one that could not be judicially determined if an exception from normal exhaustion requirements is not granted. It is by no means clear that the Supreme Court would apply the penalty-for-exercise-of-constitutional-right doctrine of *Shapiro v. Thompson,* 394 U.S. 618, 631, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), with the inexorable logic the Union's argument requires. Carried to its logical conclusion, the Union's reasoning would invalidate § 9(b) of the Act in its entirety, including the professional employees provision, § 9(b)(1), which the Supreme Court enforced in *Leedom v. Kyne.* The Board would be deprived of any power to determine appropriate bargaining units and would be required to certify any unit upon request in order not to penalize the members for exercising their rights of freedom of association. It is at least less than clear that the Union's argument will ultimately be accepted by the Supreme Court. A necessary condition of exemption from the exhaustion requirement is therefore lacking. Moreover, as we have already observed, intervention by the District Court is not necessary to afford an opportunity for adjudication of the constitutional issue. That issue can be raised before this court in the judicial review under § 10.

In concluding that the District Court was correct in declining to interfere in the ongoing Board proceeding, we have not overlooked the line of cases holding that the question of an agency's jurisdiction may be adjudicated in a subpoena-enforcement proceeding if it " 'is a strictly legal one not involving the agency's expertise or any factual determinations.' " *FTC v. Feldman,* 532 F.2d 1092, 1096 (7th Cir. 1976); *FTC v. Miller, supra,* 549 F.2d at 460. Our conclusion in the case at bar is not inconsistent with this principle. When Congress gives the federal district courts the responsibility of enforcing administrative subpoenas, as in § 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, it presumably contemplates that a district court ruling on an enforcement application will consider a challenge on purely legal grounds to the agency's authority to issue a subpoena. The adjudication of a coverage issue in the subpoena-enforcement proceeding when the facts are not in dispute does not conflict with the statutory scheme. In contrast, § 10(*l*) of the National Labor Relations Act does not, as we have noted, confer authority on the district court to adjudicate the merits of any issue. The court's jurisdiction over a claim such as the Union's counterclaim in the case at bar must rest on another jurisdictional ground, 28 U.S.C. §§ 1331, 1337 or 1361, and the claim must be viewed as an independent action challenging non-final Board action. Congress, however, has vested the courts of appeals with exclusive jurisdiction to review the merits of Board action in unfair labor practice cases. Section 10(e) and (f), 29 U.S.C. § 160(e) and (f). The exceptions recognized above were judicially created to accommodate the extraordinary situation. Extending them to authorize premature district court review of all purely legal issues would be an unwarranted departure from the jurisdictional scheme prescribed by Congress.

We accordingly affirm the judgment of the District Court.

AFFIRMED.